370 So.2d 399 (1979)
POINCIANA HOTEL OF MIAMI BEACH, INC., and 7149 Bay Drive Corporation, Appellants,
v.
Paul KASDEN et al., Appellees.
Nos. 78-369, 78-370.
District Court of Appeal of Florida, Third District.
April 17, 1979.
Rehearing Denied May 21, 1979.
Joe N. Unger, Dresnick & Freeman, Miami, for appellants.
Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for appellees.
Before HENDRY, BARKDULL and SCHWARTZ, JJ.
*400 HENDRY, Judge.
This is a consolidated appeal by the defendants in foreclosure proceedings in the lower tribunal. Plaintiffs/appellees' complaint sought to foreclose two mortgages given by the corporate defendants/appellants to Kasden and Goldberg in regard to the purchase of the Poinciana Hotel by the Abravayas, principals of the appellant corporations.[1]
Ultimately, the trial court decreed foreclosure of the two mortgages  one was the purchase money third mortgage on the Poinciana Hotel Property, and the other was directed against two apartment properties given as security by the 7149 Bay Drive Corporation to secure payment of a portion of the down payment on the purchase of the Poinciana Hotel.
In the final judgment against the Poinciana Hotel involving the purchase money third mortgage, the trial court granted foreclosure based upon: (a) default in payment of an installment on a note, and (b) anticipatory breach of the first and second mortgages, which triggered the acceleration clause in the third mortgage.[2] The mortgage on the apartment buildings was foreclosed based upon: (a) default in payment on a note as well as (b) anticipatory breach of the other encumbrances giving rise to default under the cross-default provision of all the mortgages.[3] Of course, the crucial element in any mortgage foreclosure proceeding to accelerate sums due under a note and underlying mortgage is an actual default. Kirk v. Van Petten, 38 Fla. 335, 21 So. 286 (1896) and Meredith v. Long, 96 Fla. 719, 119 So. 114 (1928).
In the instant case, the record reflects that there was, indeed, default for non-payment on the notes secured by the third mortgage and interest was not paid when due; the mortgage instrument required mortgagor to pay the sums due "promptly on the days respectively the same severally come due."[4] When payment was clearly not forthcoming, the appellees/third mortgagees filed the action.[5]
The relevant documents reveal that on February 1, 1976 appellants were obligated to pay the principle and interest due under the outstanding first and second mortgages, each of which provided ten (10) days as the grace period. No payments were made on these senior mortgages. On February 11, 1976 the appellees herein filed the foreclosure action. The mortgagor contends that in light of the fact that the grace period contained in each of the senior mortgages was ten days, mortgagor was not in default under said mortgages on February 11, 1976, as the period would not expire until midnight on that date.[6] Therefore, *401 appellant asserts that since there were no actual defaults, the option to accelerate under the junior mortgage was not available to appellees. We must disagree.
Let us turn to the final judgments and quote from those portions which are directly pertinent:
"Under the circumstances of this case, taking into consideration the fact that the Defendant made it quite clear that it was not going to live up to the terms of the mortgages and other obligations, stated that it was contemplating bankruptcy; that the principal officer's wife had taken money and gone to South America, the Court finds that Defendant made a clear and unequivocal repudiation of the demands for payment ... due and that there was a default on the third mortgage securing the Poinciana Hotel property before the institution of the foreclosure proceeding...
"Whereas, generally, the Doctrine of Anticipatory Breach does not apply, under the circumstances of this particular case, ... the Doctrine of Anticipatory Breach should apply because it fulfills the basic purposes of the Doctrine as set forth and explained by Professor Corbin in his Treatise on Contracts, Second Edition ...
"This would constitute an exception to the general rule. Ordinarily, the Doctrine of Anticipatory Breach does not apply when there is a unilateral contract, or when there is a contract for one party that has been fully performed and the only thing left to do is to pay money damages. Under that set of circumstances, there is no jeopardy; no additional jeopardy to the mortgagee other than the fact that he has to wait for his money.
"Under the circumstances of this case, I find there was additional jeopardy that should properly place this case under the rule where the Doctrine of Anticipatory Breach could apply ..."
Although it is true that no actual default of the senior mortgages had yet occurred (since on the date appellees filed the foreclosure action there remained one more day before expiration of the grace periods under each of the original senior mortgage contracts), we are in accord with the learned trial judge's finding that under the unique circumstances presented, the jeopardy to the interest of the mortgagees was abundantly clear and present so as to justify the application of the doctrine of anticipatory breach of the senior mortgage contracts. Notwithstanding the fact that the application of the doctrine when there is a unilateral contract does constitute a rare exception to the general rule, the mortgagor's repudiation of his part of the mortgage contracts prior to the time fixed for his performance entitled the mortgagees herein to protect their interests.[7]
The evidence clearly supports the trial court's finding that the mortgagor, by way of words, actions and general conduct in dealing with the appellees/mortgagees made it clear that he had no intention of making the required payments on the mortgages. The record shows a lack of good faith on the part of the mortgagor which, all in all, indicated an unequivocal repudiation of all demands for payment and threatened the security of the mortgage.[8]
The most noteworthy "threatening" circumstance surrounding the filing of the foreclosure action was the mortgagor's repeated avowals that he was about to file bankruptcy proceedings. If a suit to foreclose *402 a mortgage is commenced in a court of this state before a petition in bankruptcy is filed in a federal court, the foreclosure suit may be prosecuted in the state court without interference from the court of bankruptcy, and the first court to secure possession and custody of the property, through its officers, or whose jurisdiction has first attached to the res has exclusive jurisdiction to hear and determine all controversies in regard thereto. Appellants' petition under Chapter XI of the Bankruptcy Act would operate as a stay of the mortgage foreclosure, thus precluding sale of the property for some time. See Heritage Family Pub., Inc. v. First Federal Savings & Loan Association, 315 So.2d 558 (Fla. 2d DCA 1975).
In the case sub judice, time was of the essence for appellees in protecting their interest against the inherently time-consuming exigencies of the threatened bankruptcy proceedings; even more importantly, appellees, as third mortgagees, could have become legally responsible for the entire financial obligation under the senior mortgages if they had failed to act promptly in protecting their security interests.
Therefore, under the singularly rare fact pattern of the case sub judice we affirm the foreclosure judgments.
Affirmed.
SCHWARTZ, Judge (dissenting).
As the majority opinion makes clear, the appellants were not in violation of the express terms of the appellees' mortgage when the foreclosure action was filed because the grace period provided in the senior mortgages had not yet expired. The court, however, decides that, under the "rare" circumstances of this case, the mortgagors should be deemed to have "anticipatorily breached" the first and second mortgages. The majority reaches this conclusion only by creating an exception to the general, in fact well-nigh universal, rule that there may be no such "anticipatory breach" of a strictly unilateral obligation such as one merely to pay money in installments under a promissory note, including one secured by a mortgage. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953 (1900); General American Tank Car Corp. v. Goree, 296 F. 32 (4th Cir.1924); Garrett v. American Family Mut. Ins. Co., 520 S.W.2d 102 (Mo. App. 1975); Wallace, Clark & Co. v. Acheson Industries, Inc., 422 F. Supp. 20 (S.D.N.Y. 1976); Bird v. Computer Technology, Inc., 364 F. Supp. 1336 (S.D.N.Y. 1973); 11 S. Williston, Law of Contracts § 1300 (3d ed. 1968); Restatement of Contracts § 318, comment e; 17 Am.Jur.2d Contracts § 455 (1964); see Hall v. Northern & Southern Co., 55 Fla. 235, 46 So. 178 (1908).
Of course, if they desired, the parties who are now before us could have specifically provided that the junior mortgage would be deemed in default if payments were not made on the senior mortgages by the due date, without regard to the grace period. Since they did not in fact so provide, I think that the court's finding of an "anticipatory breach" in this situation and in this case alone, notwithstanding the clear rule to the contrary, amounts essentially to rewriting the parties' mortgage contract by the judicial insertion of such a term. It is unnecessary to prolong the list of citations which establish that, however harsh or improvident the parties' actual bargain or apparently desirable the resulting effect, the courts have no authority to engage in any such process. Home Development Corp. of St. Petersburg v. Bursani, 178 So.2d 113 (Fla. 1965); Kirk v. Van Petten, 38 Fla. 335, 21 So. 286 (1896); Florance v. Johnson, 366 So.2d 527 (Fla. 3d DCA 1979); Saul J. Morgan Enterprises, Inc. v. 57th Ave. Development Corp., 305 So.2d 18 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 586 (Fla. 1975); International Expositions, Inc. v. City of Miami Beach, 274 So.2d 29 (Fla. 3d DCA 1973).
For these reasons, it is my view that the action was prematurely filed before default, Kirk v. Van Petten, supra, and that the mortgage was therefore erroneously foreclosed. Meredith v. Long, 96 Fla. 719, 119 So. 114 (1928). I would reverse.
*403 BARKDULL, Judge, specially concurring.
I not only concur with the opinion and decision authored by Judge Hendry, but I would also affirm the action of the trial judge because, in order to protect their security interest, the holders of the third mortgage not only were faced with the prospect of the third mortgagor going into bankruptcy and the property coming under the control of the bankruptcy court but they were also on notice that the holder of a superior mortgage would accelerate immediately upon default and would commence foreclosure proceedings. Therefore, if this mortgage became in default the third mortgagees would have to pay approximately $400,000.00 in order to protect their security interest. But, if they made the installment payment due on the superior mortgage before it became in default, they could protect their security interest with a payment of $6,583.33 and continue to make the installments as they matured.
The economics of the situation dictated that the holders of the third mortgage, both in order to protect the res from becoming involved in Federal bankruptcy litigation and to limit the amount they must pay out of their own pockets, were under economic duress to prevent the superior mortgages from coming into default.
It also appears, from an examination of the record, that if the third mortgagor had tendered payment to the first mortgage holder during the last day of the grace period, the first mortgagee would have accepted same and returned the payment made by the holders of the third mortgage as the check had been delivered with instructions to return it if the due installment was forthcoming from the third mortgagor.[1] No tender was made by the third mortgagor within the grace period; in fact, no tender was ever made during the progress of the proceedings in the trial court. The most that the third mortgagor ever indicated was that it was ready, willing and able to make the payments. This is not sufficient. See: Jacobs v. Automotive Repair Center, Inc., 137 So.2d 263 (Fla. 1st DCA 1962); Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929).
NOTES
[1] Subsequently, two other individuals were properly permitted to intervene in the cause on the grounds that they were real estate brokers seeking to establish right to a brokerage commission in connection with the sale of the Poinciana Hotel, to-wit: each had received a duly executed promissory note secured by the third mortgage in payment of their respective commissions.
[2] Actually, there are two acceleration clauses in the subject mortgage instrument. The first one does not specify time for acceleration, it gives the mortgagee at its option the right to immediately declare the mortgage and indebtedness due and payable. The second clause pertains to payments called for under the terms of the mortgage and the notes (which the mortgage secures); if payment is not made pursuant to the note and fifteen (15) days elapse, the mortgagee has the right to accelerate the total indebtedness.
[3] All of the mortgages involved in this complex real estate transaction contained acceleration clauses providing that failure to pay any superior mortgage when due would be deemed a breach of the subordinate mortgage.
[4] The note recited July 1, 1975 as the time payment was due, but it was waived since the closing had been deferred until November 1, 1975  after which time however, the mortgagees made demand for payment, with increased vigor in early January of 1976.
[5] First or "senior" mortgagee is not a "necessary party" to foreclosure proceedings by a junior mortgagee. Cone Bros. Const. Co. v. Moore, 141 Fla. 420, 193 So. 288 (Fla. 1940).
[6] Where time is to be computed from a particular day, or when an act is to be performed within a specified time or after a named date, the first day is excluded and the last day included. Klein v. City of New Smyrna Beach, 152 So.2d 466 (Fla. 1963).
[7] Mortgage foreclosure is the best recognized remedy in that the filing of such an action amounts to an exercise of that mortgagee's option to declare the whole principal sum and interest secured by the mortgage due and payable. Liles v. Savage, 121 Fla. 83, 163 So. 399 (1935).
[8] Although not specifically pleaded in the trial court, it is interesting to note that under the U.C.C. a creditor/mortgagee/holder of note has a right to exercise an operative acceleration provision when there is debtor lack of good faith and the security is in jeopardy or impaired. See, Sections 671.1-203 and 671.1-208, Florida Statutes (1962). The institution of a suit for the whole debt is, of course, the most solemn form by which the holder can exercise his option.
[1] Under these circumstances, if the payment had been made the foreclosure suit would have been subject to dismissal and the third mortgagee would have been responsible for any damages occurring as the result of a wrongful receivership.