In re ROLLS CONSTRUCTION CORP., an Illinois corporation, Sutton Place Development Co., a Florida corporation, and Henry Weiss and Carol R. Weiss f/k/a Carol R. Marsden, Debtors.

**BANK OF COMMERCE & INDUSTRY, Plaintiff,**

v.

ROLLS CONSTRUCTION CORP., an Illinois corporation, et al., Defendants.

Bankruptcy Nos. 83–01417–BKC–AJC to 83–01419–BKC–AJC.
Adv. Nos. 83–0852–BKC–AJC to 83–0854–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

July 6, 1987.

## FINDINGS AND CONCLUSIONS ON REMAND

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE having come on to be heard on February 12 and March 14, 1987, upon remand for further proceedings from the United States District Court for the Southern District of Florida, and the Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

### THE PROCEDURAL BACKGROUND

Plaintiff, Bank of Commerce & Industry ("BCI") commenced this adversary proceeding by filing a complaint on October 28, 1983. A second amended complaint was filed December 30, 1983. BCI sought to determine the amount, validity, and priority among mortgages and liens asserted against parcels of real property known as Sutton Place and owned by Sutton Place Development Co. ("Sutton Place"), the debtor in this bankruptcy proceeding, and to foreclose its own second mortgage and sell the property. On February 28, 1984, the adversary proceeding was tried before my predecessor, the Honorable Joseph A. Gassen. On September 7, 1984, Judge Gassen entered Findings and Conclusions together with a Final Judgment Determining Amount, Validity and Priority of Liens and Foreclosing Mortgage, and held that the mortgage of Defendant, George D. Perlman, Trustee ("Perlman"), was both valid and first in priority, established the amount of principal, accrued interest through the date of judgment, and per diem interest thereafter, and granted BCI a judgment of foreclosure subject only to the lien of the superior Perlman Mortgage. A foreclosure sale was held on November 9, 1984, and BCI bid in its lien and obtained title to the real property, subject to the Perlman Mortgage, pursuant to a Certificate of Title dated December 5, 1984.

BCI appealed. Perlman cross appealed certain of the Findings and Conclusions of

the Bankruptcy Court. Three issues were considered by the District Court: (1) the finding that Perlman's attorneys' fees were secured by the lien of his mortgage; (2) the finding that BCI consented to the two extension agreements between Sutton Place and Florida National Properties, Inc., in which the interest rate under the first mortgage was modified from 9% to 17½%, or alternatively that BCI was estopped to deny subordination of its mortgage to those extension agreements; and (3) the finding that BCI had no right to redeem the Perlman Mortgage and, further, that BCI never made a proper tender. Perlman cross appealed two issues: (1) the finding that the Perlman Mortgage secured interest at the rate of 9% rather than 17½% under the third extension agreement from March 17, 1983 until June 17, 1983, and (2) the application of a default interest rate of 18% rather than 25% under the Perlman Mortgage.

In its Order dated August 16, 1985, the District Court affirmed in part and reversed in part the decision of the Bankruptcy Court and remanded this case to the Bankruptcy Court for further evidentiary proceedings on the following issues: (1) whether a valid third extension agreement was entered into between Sutton Place and Perlman which cured the defaults under the Florida National mortgage and extinguished BCI's right to redeem, and (2) if not, whether BCI made a legally proper tender to redeem the Florida National mortgage. The District Court held that further supplemental evidentiary proceedings were necessary to substantiate in the record the finding that (a) an effective extension of the first mortgage cured Sutton Place's default and cut off BCI's right to redeem, and (b) even if BCI had the right to redeem, it made an invalid and conditional tender; and (2) as to Perlman's cross-appeal, the District Court (a) reserved ruling on whether the third extension interest rate of 17½% was fully secured by the Perlman Mortgage until the Bankruptcy Court in supplemental evidentiary proceedings supported its initial finding that the extension was valid, and (b) held that the appropriate default interest rate under the third exten-

sion agreement, if valid, was 25% instead of 18% per annum because Perlman renewed the loan for a principal amount in excess of $500,000.00.

Thus, this Court considered only the limited issues on remand in the supplemental evidentiary proceedings: (1) whether a valid third extension agreement between Sutton Place and Perlman cured the default and extinguished BCI's right to redeem, and (2) if not, whether BCI made a legally proper tender.

## THE FACTUAL BACKGROUND

The Perlman Mortgage originated as a purchase money mortgage on the eastern parcel of the Sutton Place condominium development, in the principal amount of $442,500 at 9% interest, given by Sutton Place to Florida National Properties, Inc. ("Florida National"), the original holder, on September 30, 1980, and payable on April 30, 1981. On October 1, 1980, Sutton Place gave BCI a mortgage on both the eastern and western parcels of the development in the amount of $1,400,000. BCI made two further credit extensions secured by the same mortgage, in the amounts of $121,000 and $200,000. BCI was in second position on the eastern parcel, behind the first mortgage held by Florida National. The junior mortgage held by Abacus Mortgage and Investment Company is no longer in issue because it was foreclosed by BCI at the foreclosure sale held on November 9, 1984.

Because Sutton Place was unable to pay the first mortgage when it came due, Florida National and Sutton Place entered into an agreement extending the due date to October 31, 1981, and modifying the interest rate from 9% to 17½%. On September 16, 1981, they agreed to a second extension until February 28, 1982, with interest continuing at 17½% and eliminating the thirty day grace period.

On February 28, 1982, the first mortgage went into default. In or around August 1982, Florida National initiated a foreclosure proceeding in which BCI was a defendant and cross-claimed to foreclose its own mortgage.

On March 17, 1983, the Florida National note and mortgage were assigned to George D. Perlman as Trustee for David J. Deen—Steinberg, Inc. ("Deen"). George Perlman, David J. Deen, and Henry Weiss, principal of Sutton Place, testified that they also entered into a third extension agreement which reinstated and extended the note and mortgage for one year at the pre-existing contractual interest rate of 17½% per annum on $569,441.96, the total amount of consideration paid by Perlman and the full amount claimed by Florida National, including principal, interest, costs and attorneys' fees as provided in the note and mortgage. On March 18, 1983, Florida National voluntarily dismissed its foreclosure action.

On March 23, 1983, BCI offered Perlman a cashier's check in the amount of $560,-084.52 expressly conditioned upon there having been no extension of the final due date "thus rendering the subject mortgage and note past due and currently in default." (March 23, 1983 letter from Mark Butler to George Perlman, Perlman Exhibit C in the 2–28–84 trial). Perlman advised BCI that he could not accept the offer because his beneficiary was on vacation until April 6, 1983, because the offer was incapable of acceptance by its own terms in that the note and mortgage had been extended and were not in default, and because the offer was less than the amount paid by Perlman to acquire the note and mortgage. The next day, March 24, 1983, BCI filed suit against Perlman in the Broward County Circuit Court to redeem the property. BCI never tendered any money into the court registry for Perlman to accept in that action. In August 1983, Sutton Place filed a petition for relief under Chapter 11 of the Bankruptcy Code.

### VALIDITY OF THE THIRD EXTENSION AGREEMENT

The Court finds that there was a valid extension agreement between Perlman and Sutton Place. The extension agreement was clearly binding between Perlman and Sutton Place, and was valid and in existence at the time BCI attempted to redeem the mortgage.

This finding is supported by the uncontroverted testimony of Perlman, Deen and Weiss. The extension agreement was negotiated and entered into by the parties to be effective concurrent with the assignment of the note and mortgage to Perlman by Florida National on March 17, 1983. The terms of the agreement included a one year extension of the maturity date of the note and mortgage at the pre-existing interest rate of 17½% on $569,441.96, the total amount claimed by Florida National as due and owing as of March 16, 1983 and the amount paid by Perlman, which included principal, interest, costs and attorneys' fees.

Parol agreements to extend mortgages are valid in Florida. *Wolkowsky v. Kirchick*, 81 Fla. 415, 88 So. 261 (1921). Thus, where the credible testimony of the parties to the agreement has not been controverted, the Court finds that a legally enforceable and valid third extension agreement existed at the time BCI attempted to tender to Perlman to redeem the mortgage.

### RIGHT OF REDEMPTION

BCI did not have a right to redeem the mortgage on March 23, 1983, because the third extension agreement cured the default and extinguished any right of BCI to redeem. BCI could have bought the mortgage had Perlman been willing to sell it for a mutually agreeable price, but absent a mutual agreement, BCI did not have a right to redeem or acquire the mortgage on or after March 23, 1983.

### INVALIDITY OF TENDER

The Court finds that, even if BCI had a right to redeem the mortgage, it failed to make a legally proper tender, directly or by pleading.

Because BCI never deposited any money into the court registry in its redemption action against Perlman, that tender fails as a matter of law. *Kreiss Potassium Phosphate Co. v. Knight*, 98 Fla. 1004, 124 So. 751, 754–55 (1929); *Poinciana Hotel of Miami Beach, Inc. v. Kasden*, 370

So.2d 399, 403 (Fla. 3d DCA 1979) (Barkdull, J., concurring). BCI simply did not make a valid tender by pleading under Florida law because it did not fulfill the requirement that the full amount necessary to redeem the mortgage be deposited into the court registry.

■ BCI's delivery to Perlman of a check in the amount of $560,084.52 on March 23, 1983 did not constitute a legally proper tender because it was not an absolute, unconditional tender of the full amount due under the Perlman note and mortgage, kept present and available for Perlman's acceptance at all times. The offer was expressly conditioned on there having been no extension of the due date. There had been an extension of the due date and therefore the attempted tender failed by its own terms. In addition, BCI offered an insufficient amount. Its offer did not include any amount for attorneys' fees of $10,000 or for costs of $884.98 incurred by Florida National in its foreclosure action and paid by Perlman.

Under Florida law, where the mortgage and note expressly provide for payment of attorneys' fees necessary to collect payment, whether or not through suit, expenditures for fees become part of the redemption price. *Peppercorn v. Bencini*, 101 Fla. 446, 134 So. 490 (Fla.1931). In the Motion for Summary Judgment served and filed by Florida National in its foreclosure action, Florida National claimed specific amounts for principal and interest, costs and attorneys' fees and supported each amount with a sworn affidavit—one for principal and interest, one for costs and one for attorney's fees. BCI was a defendant and cross-claimant in that suit and received copies of the motion and affidavits prior to its attempted tender to Perlman. The amount of BCI's attempted tender to Perlman was expressly based on the principal and interest affidavit filed by Florida National in support of its Motion for Summary Judgment. BCI had actual knowledge of the amount of costs and attorney's fees incurred by Florida National up to the date of the affidavits, but did not include any amounts for costs or attorney's fees in its

attempted tender to Perlman. Hours before its attempted tender to Perlman on March 23, 1983, BCI was warned by Florida National that BCI's offer of $560,084.52 was insufficient because it did not include any amount for costs and attorneys' fees paid by Perlman. BCI considered whether it should increase its offer to include such amounts but decided not to do so. If BCI disputed the inclusion of attorneys' fees it could have offered under protest the full amount due and owing. By failing to meet the elements of a proper tender, BCI made an imprudent business judgment, and as a consequence, failed to make a proper tender.

■ Florida law did not require Perlman to notify BCI of the amount necessary to make a proper tender. The Florida National note clearly calls for attorneys' fees and the Court finds that the evidence clearly shows that BCI either knew, or should have known, or could have known, the correct amount of attorneys' fees and costs actually paid by Perlman, or which were being demanded by Perlman, and failed to offer or in some way provide for these amounts in addition to its tender of principal and interest due under the mortgage. Consequently, the delivery of a check by BCI to Perlman in an amount which did not include or provide for the $10,000.00 in fees and $884.98 in costs did not constitute a valid tender. Therefore, BCI cannot complain of a lack of notice of the amount due even if it was legally entitled to such notice.

### AMOUNTS DUE AND SECURED UNDER THE PERLMAN MORTGAGE

■ As to Sutton Place, the original owner and mortgagor who agreed to the third extension and accepted the starting amount of $569,441.96 on March 17, 1983, Perlman is due, and his mortgage secures, the sum of $1,458,509.19 as of July 6, 1987, calculated as follows:

| | | |
|---|---|---|
| $ | 569,441.96 | Principal Amount of Mortgage & Note. |
| + | 25,117.85 | 3/18/83 to 6/17/83 = 92 days at 17.5% interest on $569,441.96. |

| | | |
|---|---|---|
| + | 166,152.78 | 6/18/83 to 8/17/84 = 426 days at 25% default interest on $569,441.96 |
| | 760,712.59 | |
| + | 20,841.60 | 8/18/84 to 9/26/84 = 40 days at 25% default interest on $760,712.59 |
| + | 79,515.33 | Attorney's Fees and Costs: $90,400.31 − $10,884.98 = $79,515.33 |
| | 861,069.52 | |
| + | 56,617.92 | 9/27/84 to 12/31/84 = 96 days at 25% interest on $861,069.52 |
| + | 215,267.38 | 1985 interest at 25% on $861,069.52 |
| + | 215,267.38 | 1986 interest at 25% on $861,069.52 |
| + | 110,286.99 | 1/1/87 to 7/6/87 = 187 days at 25% on $861,069.52 |
| | $ 1,458,509.19 | |

The amount chargeable against BCI, who did not accept the third extension, as the second mortgagee is $1,160,409.68 as of July 6, 1987, calculated as follows:

| | | |
|---|---|---|
| $ | 442,500.00 | Principal Amount of Mortgage & Note. |
| + | 33,309.12 | 9/26/81 to 2/28/82 = 157 days at 17.5% interest on $442,500.00 |
| + | 83,360.04 | 3/1/82 to 3/17/83 = 382 days at 18% interest on $442,500.00 |
| + | 10,884.98 | Florida National Properties Attorney's Fees and Costs |
| + | 19,998.96 | 3/18/83 to 6/17/83 = 92 days at 17.5% interest on $453,384.98; i.e. ($442,500.00 + $10,884.98) |
| + | 95,249.34 | 6/18/83 to 8/17/84 = 426 days at 18% interest on $453,384.98 |
| | 685,302.44 | |
| + | 13,518.40 | 8/18/84 to 9/26/84 = 40 days at 18% interest on $685,302.44 |
| + | 79,515.33 | Attorney's Fees and Costs of $90,400.31 − $10,884.98 |
| + | 36,208.32 | 9/27/84 to 12/31/84 = 96 days at 18% interest on $764,817.77; i.e. ($685,302.44 + $79,515.33) |
| + | 137,667.20 | 1985 interest at 18% on $764,817.77 |
| + | 137,667.20 | 1986 interest at 18% on $764,817.77 |
| + | 70,530.79 | 1/1/87 to 7/6/87 = 187 days at 18% interest on $764,817.77 |
| | $ 1,160,409.68 | |

(The principal amount of the note and mortgage chargeable against BCI as the second mortgagee, which did not consent to the third extension agreement, is under $500,000.00, and the default interest rate applicable to BCI as the second mortgagee is therefore 18% per annum. Without the second mortgagee's consent, the mortgagor and senior mortgagee cannot enforce against the second mortgagee an agreement which puts the junior mortgagee in a worse position.)

## MOTION TO DISMISS

The Court denies Perlman's motion to dismiss on the grounds of mootness and/or waiver and estoppel based on BCI's previous foreclosure of its mortgage, its failure to stay the foreclosure judgment, and its purchase of the property at the foreclosure sale subject to the Perlman mortgage.

## NOVATION

The Court finds that there was no novation and that BCI's position that a novation of the Perlman note and mortgage occurred is without merit and is not in any way supported by competent evidence.

## ATTORNEYS' FEES

Pursuant to the provisions of the note and mortgage, the Court finds Perlman is entitled to recover, and his mortgage secures, his costs and expenses, including reasonable attorneys' fees, in protecting the security of his mortgage and defending the actions brought against him by BCI. The Court rejects the argument of BCI that the Note and Mortgage do not provide for the recovery of costs and expenses, including attorneys' fees, in a noncollection proceeding such as these where one creditor is attacking another creditor. Absent agreement of the parties, the Court shall determine the amount of costs, expenses and attorneys' fees to be awarded Perlman upon appropriate motion and hearing, following which the Court will enter such supplemental or amended order or judgment as may be appropriate.

## MOTION FOR SANCTIONS

Perlman's motion for sanctions against BCI based on the non-appearance of attorney Alvin Becker at the trial on Remand, after obtaining a continuance based on representations of the need for

his personal attendance at the trial of this cause, is GRANTED. The Court finds the appropriate sanction to be imposed against BCI is the sum of $1500.00, which sum Perlman shall recover of BCI, with interest thereon as provided by law.

A Final Judgment on Remand has been entered in conformity herewith.

### FINAL JUDGMENT ON REMAND

This adversary proceeding came before the Court on February 12 and March 14, 1987 for trial on remand. Based upon the evidence and matters presented, the Court has by separate memorandum decision entered its findings and conclusions. It is therefore

FOUND, ORDERED AND ADJUDGED as follows:

1. This Court has jurisdiction over the parties and the subject matter.

2. Defendant George D. Perlman, as Trustee ("Perlman"), is the owner and holder of that certain promissory note and first mortgage from Sutton Place Development Co. ("Sutton Place") to Florida National Properties, Inc., dated September 30, 1980, recorded October 1, 1980 in Official Records Book 9115 at Page 768 of the Public Records of Broward County, Florida ("the note and mortgage"), which is hereby found to constitute a valid and perfected lien upon the property described therein in the amounts set forth in Paragraph 3 herein, which lien is superior to any other claim or estate in the property. The note and mortgage are and have been in default, and have been materially breached by the debtor Sutton Place.

3. Perlman is due under the note and mortgage: $569,441.96 as principal; $809,551.90 as interest through July 6, 1987; $79,515.33 for costs, expenses and attorney's fees incurred in this adversary proceeding through September 26, 1984; additional costs, expenses and attorneys' fees and interest thereon in amounts to be determined at a further hearing, following which the Court will enter such supplemental or amended order or judgment as may be appropriate; plus post-judgment interest beginning July 7, 1987 on the sum of $1,458,509.19 at the rate of 25% per annum.

4. Perlman shall have the right to seek foreclosure of his mortgage on the amounts due as set forth in Paragraph 3 herein. In any such foreclosure action, Plaintiff Bank of Commerce & Industry ("BCI") shall have the right to redeem the property from the note and mortgage within the time permitted by law by paying Perlman the following amounts: $442,500.00 as principal; $627,509.37 as interest through July 6, 1987; $10,884.98 for costs and attorney's fees paid by Perlman on March 16, 1983; $79,515.33 for costs, expenses and attorney's fees incurred in this adversary proceeding through September 26, 1984; such additional costs, expenses, attorneys' fees and interest thereon awarded pursuant to paragraph 3 above; plus post-judgment interest beginning July 7, 1987 on the sum of $1,160,409.68 at the rate of 18% per annum.

5. Perlman shall recover of BCI the sum of $1,500.00 as sanctions, with interest thereon as provided by law.

6. This Court retains jurisdiction of this adversary proceeding for the purpose of making any and all further orders and judgments herein as may be proper, including but not limited to deficiency judgment.