**CALDER RACE COURSE, INC., Plaintiff,**

v.

**ILLINOIS UNION INSURANCE COMPANY, Defendant.**

**No. 87–2458–CIV.**

United States District Court, S.D. Florida.

May 12, 1989.

R. Bruce Wallace, Taylor, Brion, Buker & Greene, Miami, Fla., for plaintiff.

Joseph Lowe, Marlow, Shofi, Connell, Valerius Abrams, Lowe & Adler, Miami, Fla., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ATKINS, District Judge.

THIS CAUSE is before the court on the plaintiff's and defendant's cross motions for summary judgment. After carefully considering the pleadings, the relevant law, and after a hearing, it is

ORDERED AND ADJUDGED that the plaintiff's motion is GRANTED. It is further

ORDERED AND ADJUDGED that the defendant's motion is DENIED.

The case before this court began with a tragic accident on October 31, 1981, which left a jockey paralyzed. David Ashcroft won a ten million dollar verdict on September 10, 1982, against Calder Race Course, Inc. ("Calder"); the trial court entered judgment on October 4. On November 18, five weeks later, the trial court vacated the judgment and entered an order for remittitur or in the alternative for a new trial. Ashcroft declined the remittitur and filed a notice of appeal; Calder cross appealed.

In February of 1985, the Third District Court of Appeals of Florida held that Ashcroft had assumed the risk of injury and ordered judgment be entered for Calder. After granting review, the Supreme Court of Florida reinstated the jury verdict. In September of 1986, final judgment was entered by the trial court in favor of Ashcroft for ten million dollars plus interest at the rate of twelve per cent from September 10, 1982, the date of the jury verdict.

Calder was insured under a policy written by Illinois Union Insurance Company ("Illinois Union") to a limit of $500,000 for injuries suffered by any jockey at the race course. The policy which was in effect during the applicable period also provided that, in addition to the $500,000 liability limitation, Illinois Union was responsible to pay:

[A]ll expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and *all interest on the entire amount of any judgment* therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon....

*See* Illinois Union's General/Automobile/Liability Policy, Supplementary Payments (a) (hereinafter "Primary Policy")

(emphasis added). The policy also acknowledged that:

> The insurance afforded by this policy is primary insurance except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, *the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.*

*See* Primary Policy, Conditions ¶ 6 (emphasis added).

Illinois Union was Calder's primary insurer. Calder had also purchased, as part of the same insurance package, an additional twenty million dollar excess umbrella policy from Mutual Fire, Marine and Inland Insurance Company ("Mutual Fire"). Mutual Fire's policy contained a similar supplementary payment provision and an "Other Insurance" provision that stated:

> The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance available to the Insured and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise, unless such other insurance applies specifically as excess insurance over the limits of liability provided by this policy. The Company shall not be liable for loss expense and legal expenses included in other valid and collectible insurance.

*See* The Mutual Fire, Marine & Inland Insurance Company's Policy, Other Conditions ¶ 6 (hereinafter "Excess Policy"). Mutual Fire's policy also contained a defense provision:

> (a) The Company shall defend any suit seeking damages which are not payable on behalf of the Insured under the terms of any policy of underlying insurance (1) because such damages are not covered thereunder....
>
> \*     \*     \*     \*     \*     \*
>
> (c) With respect to any suit defended by the Company, it will pay in addition to the ultimate net loss:

> (i) all expenses incurred by the Company and reasonable expenses incurred by the Insured at the Company's request, excluding loss of wages, salary or earnings....

*See* Excess Policy, The Conditions ¶ 2. Mutual Fire's policy also provided:

> In the event the Insured or the Insured's underlying insurer elect not to appeal a judgment in excess of the applicable underlying limit, the Company may elect to do so at its own expense and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate loss exceed the amount set forth in LIMITS OF LIABILITY plus the taxable costs, disbursements and interest incidental to such appeal.

*See* Excess Policy, Occurence, Claim or Suit ¶ 2.

Ashcroft's injuries were covered by both Illinois Union's and Mutual Fire's policies. As the primary carrier, Illinois Union assumed the defense for Calder. Prior to trial, Mutual Fire retained counsel to assist. Mutual Fire handled the appeal for Calder and kept Illinois Union's counsel apprised of all developments.

In June of 1986, Mutual Fire was placed under supervision by the Commonwealth of Pennsylvania. Although Illinois Union sent a check for $500,000 payable to Calder on February 11, 1987, to date it has made no attempt to make a payment of any part of the interest on the Ashcroft judgment.

■ This court is now asked to resolve the question of whether Illinois Union is liable for interest which accrued during the period of appeal. Illinois Union disputes that it is obligated to pay interest on the entire judgment and argues that its contractual obligation to pay interest was altered by Mutual Fire's involvement in the Ashcroft appeal and its subsequent insolvency. Illinois Union also contends that it stopped the running of interest by tendering its policy limits. Illinois Union finally contests the conclusion that the interest that accrued during the Ashcroft appeal is

"interest on a judgment" under the terms of the insurance policy.

Illinois Union argues that the liability of an insurer under the standard interest clause does not extend to interest on the entire amount of the judgment when there is an umbrella carrier. Since both carriers assumed identical obligations, Illinois Union urges that the post judgment interest should be shared on a pro rata basis. Moreover, Mutual Fire controlled the litigation and made the decision to appeal despite Illinois Union's desire to pay its policy limits and terminate the litigation. It would be unconscionable to compel Illinois Union to pay the entire amount of interest which accrued pending the appeal when Illinois Union wished to tender its policy limits and prevent the running of interest.

Calder stresses that the language of the policy drafted by Illinois Union is unambiguous. It states unequivocally that "the company will pay, in addition to the applicable limit of liability ... all interest on the entire amount of any judgment...." Calder points out that the Florida courts follow the national majority and support the position that an insurer is liable for interest on the entire judgment though that judgment exceeds its policy's limits.

The parties agree that the general rule in many jurisdictions, including Florida, provides that when a policy contains a supplementary payment provision the insurer is liable for interest on a judgment though the amount rendered the total in excess of the policy limits. *See, e.g., Highway Casualty Co. v. Johnston*, 104 So.2d 734 (Fla. 1958); *Perez v. Otero*, 415 So.2d 101 (Fla. Dist.Ct.App.1982); *Allstate Insurance Co. v. Warren*, 125 So.2d 886 (Fla.Dist.Ct.App. 1961); *see also* 8A J. Appleman, Insurance Law and Practice § 4894.25 (1981) (hereinafter "Appleman"). Illinois Union argues that this general rule does not apply when an excess carrier assumes the same obligation. The Florida district court of appeals considered a similar argument in *Insurance Company of the State of Pennsylvania v. Puritan Insurance Co.*, 532 So.2d 35, 36 (Fla.Dist.Ct.App.1988). The Insurance Company of Pennsylvania ("Penn") argued that because both primary and excess carriers were responsible for funds due to the insured, the companies should share on a pro rata basis the interest incurred. The court rejected that argument saying that "[h]ad both carriers assumed identical obligations, that solution *may* have been considered." 532 So.2d at 36 (emphasis added). The court found that Puritan's policy qualified its obligation:

> As respects occurrences covered under this policy, but not covered under the underlying insurance or under any other collectible insurance, the company shall ... pay ... all interest accruing after the entry of judgment.

532 So.2d at 36.

Although Illinois Union's and Mutual Fire's supplementary payment clauses are similarly worded, they did not assume identical obligations. Mutual Fire's policy also contains a qualification: "The Company shall not be liable for loss expense and legal expenses included in other valid and collectible insurance." *See* Excess Policy, Conditions ¶ 6. In *Puritan*, the "[e]xcess carrier['s] [ ] promise was limited to those cases in which no underlying insurer had assumed the obligation." 532 So.2d at 36. Mutual Fire, an excess carrier, limited its obligation to those occasions when no "other valid and collectible insurance" was available. "The obligation of a primary insurer is contractual in nature," and is "preemptive over the secondary excess carrier's obligation." *Id.* (citing *Auto Owners Insurance Co. v. Palm Beach County*, 157 So.2d 820 (Fla.Dist.Ct.App. 1963)). In *Williams v. United Services Automobile Association*, 250 F.Supp. 502, 507 (N.D.Miss.1965), the court articulated the obligations of primary and secondary carriers:

> United is the primary carrier and Maryland is the excess carrier. Simply stated, this means that if the coverage afforded by both policies is effective in this case ... the the full proceeds of the United policy must be exhausted before recourse may be had to Maryland's policy.

250 F.Supp. at 507. In *Williams*, United's policy contained a supplementary payment

provision identical to that contained in Illinois Union's policy. The court stated that

[u]nder these expressed clear provisions of its policy, United is just as liable for interest on the entire amounts of the judgments until its stated limits are paid or tendered in court as it is liable to pay the stated limits. Until this is done by United, there is no liability against Maryland for any interest.

250 F.Supp. at 507.

Illinois Union bound itself to pay interest on the entire judgment until such time as it paid, tendered, or deposited into the court its policy limits, this liability "not [to] be reduced by the existence of such other insurance." *See* Primary Policy ¶ 6. Mutual Fire's policy expressly limited its obligation as excess coverage "for loss expense and legal expenses [not] included in other valid and collectible insurance." *See* Excess Policy, Other Conditions ¶ 6. Illinois Union is obligated for interest on the entire judgment until such time as it "paid, tendered or deposited into the court" its policy limits.

If in fact Illinois Union's and Mutual Fire's obligations should be shared on a pro rata basis, there is support for the conclusion that a post judgment interest obligation is one of joint and several liability. *See, e.g., Bossert v. Douglas*, 557 P.2d 1164, 1168 (Okla.Ct.App.1976) ("[I]nsurance companies are jointly and severally liable for the entire amount of postjudgment interest. . . .").

Illinois Union points out that the policy behind the rule of holding the insurer liable for the interest on the entire judgment rested on the rationale that because the insurer controls the litigation on appeal as well as in the trial court, it is fair to hold it responsible for accrued interest. Illinois Union argues that, in a case such as this one, when the excess carrier accepts tender of the defense from the primary carrier following the trial and thereafter controls the appeal, it would be unconscionable to to require the primary carrier to shoulder the entire amount of interest that accrued. Here, Illinois Union argues, it clearly desired to pay its policy limits and prevent the running of interest, but Mutual Fire's control of the appeal prevented such an option. Because Illinois Union was embroiled in a dilemma which was not of its own making, the argument continues, it should not be liable for the interest on the entire judgment.

The rationale which protects an insured from the burden of interest after entry of a judgment does not transfer easily to a situation in which an excess carrier wishes to appeal an excess judgment. *See, e.g.,* Appleman, § 4894.25, p. 78 ("It seems fair to compel the insurer to pay all the interest which accrues pending an appeal, even though the judgment is in excess of the policy limits, for the reason that the insured might desire to pay the excess judgment and thus prevent the running of interest, but the insurer's control of the litigation would prevent him from doing so."). An insured cannot demand that the insurer pay its policy limits and forego an appeal. A primary carrier, however, may tender its policy limits and end its obligation for any further interest at any time post judgment. Illinois Union did not choose this option despite the fact that it was entitled to do so under its policy. *See* Primary Policy, Supplementary Payments (a) ("all interest on the entire judgment and *before the company has paid or tendered or deposited in court* that part of the judgment which does not exceed the limit of the company's liability thereon . . .") (emphasis added). Had Illinois Union paid, tendered, or deposited its policy limit into the court, Mutual Fire would have been free to pursue its appeal of the excess judgment and Illinois Union would have halted its ongoing obligation to pay post judgment interest. *See* Appleman, § 4894.25, p. 97 ("It is within the power of the insurer to stop the running of interest by discharging its obligations. This it can do by payment of the sums due, or by adequate tender into court.") (footnotes omitted).

Illinois Union is liable for interest on the entire judgment under the terms of its policy. Its failure to tender or deposit into court the sums due continued its liability. Neither the fact that Calder carried excess

coverage nor the fact that the excess carrier controlled the appeal prevented Illinois Union from taking this step and thus neither fact reduced it Contractual obligation.

▮ Illinois Union contends that it did in fact tender its policy limits and terminated its liability under the supplementary payment provision. The stipulated facts show that Illinois never deposited into court or paid the sums due. It argues that it "tendered" payment of its policy limits to Calder and stemmed its liability on the increasing interest.

Under Florida law:

'Tender' has a definite legal signification. It imports not merely the readiness and ability to pay the money ... at the time or place mentioned in the contract, but also the actual production of the thing to be paid or delivered and an offer of it to the person to whom the tender is to be made.

*Kreiss Potassium Phosphate Co. v. Knight,* 124 So. 751, 754 (Fla.1929) (citing *Holmes v. Holmes,* 12 Barb. (N.Y.) 137, 144; 38 Cyc. 131; Hunt on Tender, 3); *see also Masser v. London Operating Co.,* 145 So. 79, 83 (Fla.1932) ("A mere offer to pay is not a tender of money.") (citing *Lindsay v. Matthews,* 17 Fla. 575, 589; (*Greeley v. Whitehead,* 35 Fla. 523, 17 So. 643, 28 L.R.A. 286, 48 Am.St.Rep. 258); *Gus' Baths, Inc. v. Lightbown,* 101 Fla. 1205, 135 So. 300, 301 (1931). The Ninth Circuit looked to the general principles of contract law to define tender and found that its essential requirements are:

(1) An unconditional offer to perform, coupled with a manifested ability to carry out the offer;

(2) A production of the subject matter of the contract;

(3) The property tendered must not be less than what is due; and

(4) If greater, there must be no demand for a return of the excess.

*Guy F. Atkinson Co. of California v. Commissioner of Internal Revenue Service,* 814 F.2d 1388, 1393 (9th Cir.1987) (citing 15 S. Williston, Williston on Contracts § 1810 at 421–22 (1972)). *See also Riley–Stabler Constr. Co. v. Westing-*

*house Elec. Corp.,* 396 F.2d 274, 278 (5th Cir.1968) (alleged "tender" actually only a plea of tender when the sum was not tendered into court); *Collins v. Kingsberry Homes Corp.,* 243 F.Supp. 741, 744 (N.D. Ala.1963) (citation omitted) ("The essential characteristics of a 'tender' are an unconditional offer to perform, coupled with a manifested ability to carry out the offer, and production of the subject matter of the tender."); *Flowers Transp., Inc. v. M/V Peanut Hollinger,* 94 F.R.D. 99, 100 (E.D. La.1982) ("It is well settled that a tender not accompanied by payment of money into the registry of the court is not a valid tender.") (citing *Riley–Stabler Constr. Co.,* 396 F.2d 274; *Caine v. John Hancock Mutual Life Ins. Co.,* 313 F.2d 297 (6th Cir. 1963) (citations omitted))); *In re Rolls Constr. Co.,* 74 B.R. 1005, 1009 (Bankr.S.D. Fla.1987) (tender must be unconditional); *Dade County v. American Re–Insurance Co.,* 467 So.2d 414, 420 (Fla.Dist.Ct.App. 1985) (tender must include interest to which the creditor is entitled); *Jacobs v. Automotive Repair Center, Inc.,* 137 So.2d 263, 265 (Fla.App.1962) (oral offer to pay not a legal tender).

Illinois Union's assertion of a valid tender rests on several events that occurred throughout the history of the prior litigation. In a letter dated August 17, 1982, Illinois Union offered its policy limits to Shand, Moran & Co., Inc., for use in negotiating a settlement with David Ashcroft with the understanding that Illinois Union would pay its policy limits if Shand effectuated a settlement that exceeded those limits. Shand was the managing general agent and the claims manager for Mutual Fire. *See* Pretrial Stipulation ¶ 7 (Dec. 23, 1988). On September 2, 1982, counsel for Illinois Union "made an offer on the record to Ashcroft to settle the case for ILLINOIS UNION's policy limits of $500,000.00, on the condition that Ashcroft release Calder. The offer was declined." *See* Pretrial Stipulation ¶ 8. In a letter dated March 8, 1983, counsel for Illinois Union offered its policy limits to Calder's general counsel. *See* Pretrial Stipulation ¶ 15. On September 30, 1986, counsel for

Illinois Union delivered a check to David Ashcroft's counsel in the amount of $500,-000.00 payable to Ashcroft and his counsel and accompanied by a proposed partial satisfaction of judgment. *See* Pretrial Stipulation ¶ 24. Finally, on February 11, 1987, Illinois Union sent a check in the amount of $500,000.00 accompanied by a transmittal letter that indicated that the payment was made without prejudice to Calder's claim for interest on the entire judgment from September 10, 1982, the day of the verdict. *See* Pretrial Stipulation ¶ 28.

None of the events described by Illinois Union amounts to a valid tender of its policy limits because none demonstrates that it unconditionally offered and produced the subject matter of the tender. Illinois Union's "standing offer to pay the full policy limits," *see* Defendant, Illinois Union Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in support of its Motion for Summary Judgment at 20, was exactly that, an offer to pay. Absent the production of the subject matter of the tender, the "tender" is merely an intent to tender. *See, e.g., United States v. Allen,* 699 F.2d 1117, 1122 (11th Cir.1983) ("The tender requirement 'is not met by merely evidencing a willingness to pay, or by an offer or intention to make a tender.' ") (citation omitted). Courts have held that a good faith offer and continued efforts to pay the policy limits, when accompanied by a deposit into the registry of the court constitutes tender. *See, e.g., Farmers Alliance Mut. Ins. Co. v. Bethel,* 812 F.2d 412, 413 (8th Cir.1987). Illinois Union never deposited its policy limits with the court.

Illinois Union's assertions of tender were either accompanied by conditions to payment. *Knippen v. Glen Falls Ins. Co.,* 564 F.2d 525, 530 (D.C.Cir.1977) (offer of the policy limits in exchange for a full release not a "tender"), or were unaccompanied by the requisite production of the subject matter of the tender, *Riley–Stabler Constr. Co.,* 396 F.2d at 278, with the exception of its final offer of a check in the amount of $500,000.00 which was accompanied by a transmittal letter stating that payment was made without prejudice to Calder's claim

for interest. But tender must not be for less than what is due. *Guy F. Atkinson Co.,* 814 F.2d at 1393. Since Illinois Union's final offer lacked the interest to which the creditor was entitled, it was inadequate as a valid legal tender. *See Dade County v. American Re–Insurance Co.,* 467 So.2d at 420.

■ Illinois Union also argues that its failure to tender can be excused by the theory of futility. If an act, when done, would be futile, the actor is excused from making the fruitless gesture. *Sisco v. Rotenberg,* 104 So.2d 365, 375 (Fla.1958). Under these circumstances, however, the theory of futility is inapplicable. Illinois Union has not shown that, had it made an unconditional production of the subject matter of the tender, the offer would have been refused. Illinois Union relies on circumstances in which it either conditioned its offer upon prerequisites that proved unsatisfactory to the offeree or failed to physically produce the subject matter to be tendered. A party cannot excuse its failure to act by a mere assertion that such action would have been futile.

■ Finally, Illinois Union urges that the date from which the interest should be calculated is the date of final judgment. Since final judgment was not entered until September 29, 1986, it had no obligation to pay interest until that date. In addition, the supplementary payment provision of the policy states that the company will pay "all interest on the entire amount of any judgment," and not on the entire amount of any verdict. If the language of the policy is not ambiguous, the court should apply the plain meaning of the words and phrases.

Although a judgment was entered on October 4, 1982, on the verdict, it was vacated pursuant to order for remittitur or in the alternative for new trial. When the supreme court ruled that the Order of Remittitur was in error, no judgment was in effect. The supreme court remanded "with instruction to reinstate the jury verdict and enter judgment." Therefore, Illinois Union points out, its supplementary payment pro-

vision was not triggered until entry of final judgment on September 29, 1986.

Under Florida law, when a verdict is reinstated on appeal, a plaintiff is entitled to post judgment interest from the date of the verdict. "When a judgment of reversal is entered which requires the entry of a money judgment on a verdict, the mandate shall be deemed to require such money judgment to be entered as of the date of the verdict." Fla.R.App.P. 9.340(c). Since the supreme court reinstated the jury verdict and directed entry of a money judgment, the money judgment was entered as of the date of the jury verdict and interest post judgment began to run on September 10, 1982.

This court recognizes the fact that under the law in Florida, one insurance carrier is not the guarantor of the solvency of another carrier chosen by the policyholder. *See, e.g., Golden Isles Hospital, Inc. v. Continental Casualty Co.*, 327 So.2d 789 (Fla. Dist.Ct.App.1976). But case law has also established that each insurance carrier that is contractually and legally obligated to an insured should remain so bound. *Aetna Casualty & Surety Co. v. Market Ins. Co.*, 296 So.2d 555, 558 (Fla.App.1974). When an insured has the benefit of excess coverage, it cannot expect to reap a windfall by virtue of overlapping protection. But, as one commentator has observed,

> [i]t is important in such instances to be certain that the court does not become confused and succeed in exonerating both companies. Each should retain its legal liability. If any question arises as to which should pay, that can be settled between them by agreement or by litigation. It should not diminish the rights either of the insured or of the victim.

Appleman, § 4894.25. Illinois Union has offered no persuasive reason why this court should diminish its contractual liability because of Mutual Fire's inability to perform. Therefore Illinois Union is liable under the terms of its contract to its insured for interest on the entire amount of the judgment from the date of the verdict, September 10, 1982, together with appropriate costs. The court will retain jurisdiction to consider a properly supported motion for attorney's fees.

DONE AND ORDERED.