983 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Brenda DICUS; William Dicus, Plaintiffs-Appellants,
v.
Harold D. LAIPPLY, Defendant-Appellee.
 No. 92-3074.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1992.
 
 Before BOYCE F. MARTIN, J.R. and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Brenda and William Dicus, the plaintiffs below, obtained judgment and damages against Harold Laipply for personal injuries. They appeal the district court's grant of summary judgment which denied the post-judgment interest on the Dicus' award. This dispute concerns the interpretation of contractual language in Laipply's liability insurance policy with Motorists Mutual Insurance Company.
 
 
 2
 On January 23, 1985, Harold Laipply and Brenda and William Dicus had an automobile accident. Mr. Laipply was driving on State Route 19 between Galion, Ohio, and Bucyrus, Ohio when he attempted to pass a van driven by Mrs. Dicus. The road was icy, and Mr. Laipply's car slid into the van. Mrs. Dicus' husband, William Dicus, was in the car with her during the accident.
 
 
 3
 Immediately after the accident, Mrs. Dicus did not appear to have sustained any serious injuries. The following evening, however, a pain in her neck and lumbosacral spine developed. Mrs. Dicus underwent disc surgery on July 1, 1985, performed by Dr. Juan Segarra-Vidal. Mrs. Dicus again saw Dr. Vidal for pain in her lower back and legs on August 1, 1985. More testing ensued and led to a second surgery to remove a herniated disc on November 19, 1985. After this operation, Mrs. Dicus' health improved, and by April 1, 1986, she was swimming and engaging in physical fitness programs.
 
 
 4
 In May 1986, Mrs. Dicus moved to Florida. She began treatment with Dr. Glenn Rechtine, an orthopedic surgeon, on August 25, 1986 because of pain in her lower back, hip, thigh, calf, and foot. Dr. Rechtine diagnosed Mrs. Dicus' condition as L5 radiculopathy with a permanent left foot drop. In September 1986, Mrs. Dicus was in another automobile accident in which she pulled muscles in her lower back. Mrs. Dicus continued to see Dr. Rechtine until April 14, 1987.
 
 
 5
 Brenda and William Dicus filed suit against Mr. Laipply on May 21, 1987. A jury trial took place from November 28, 1988, until December 2, 1988. The jury returned a verdict in favor of Mrs. Dicus in the amount of $220,000, and in favor of Mr. Dicus in the amount of $30,000. Thereafter, on January 31, 1989, the district court entered judgment upon the jury's verdict. On March 13, 1989, Laipply's attorney wrote a letter to Mr. and Mrs. Dicus in which he stated, "Motorists [Laipply's liability insurance carrier] is willing to pay its policy limits of $100,000 in full satisfaction of the judgment." When Mr. and Mrs. Dicus rejected this offer, Laipply appealed the amount of damages. This court affirmed the original judgment on August 30, 1990.
 
 
 6
 Motorists Mutual did not pay Mr. and Mrs. Dicus after the appeal. On December 6, 1990, Brenda and William Dicus sought leave from the district court to file a supplemental action naming Laipply's insurance carrier, Motorists Mutual Insurance Company, as an additional defendant. In that action, the Dicuses sought $100,000, which was the maximum amount that could be paid under Laipply's policy, as well as post-judgment interest. Motorists Mutual had agreed in its policy to pay damages for any bodily injury because of an automobile accident for which Laipply was legally responsible and interest accruing after a judgment was entered. However, Motorists Mutual refused to pay any portion of the Dicus' demand. Accordingly, the Dicuses claimed that they were entitled to execution of the $100,000 cash bond posted by Motorists Mutual and interest on the entire judgment of $250,000, from the date the court entered judgment until the defendants paid. The district court granted the motion for execution on February 11, 1992 and released the $100,000 to Mr. and Mrs. Dicus.
 
 
 7
 After answering the supplemental complaint, Motorists Mutual filed a motion for summary judgment, in which it argued that interest on the judgment was tolled as of March 13, 1989 when it offered to pay its full policy limits. Mr. and Mrs. Dicus also moved for summary judgment based on the language of Laipply's insurance policy, claiming that the policy entitled them to receive interest from the period of judgment entry until they received the $100,000 policy limits. On January 3, 1992, the district court granted summary judgment in favor of Motorists Mutual, holding that Motorists Mutual was obligated to pay interest on the entire $250,000 judgment only until March 13, 1989, the date of its offer to pay policy limits.
 
 
 8
 Mr. and Mrs. Dicus filed a timely notice of appeal from this order on January 14, 1992. The standard of review for an appeal from a district court's grant of summary judgment is de novo. Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991).
 
 
 9
 Mr. and Mrs. Dicus contend that Motorists Mutual's contractual obligation to pay post-judgment interest did not cease when Laipply's attorney mailed them a written offer to pay $100,000. Essentially, this dispute concerns interpretation of the insurance contract. Motorists Mutual's policy provided Laipply with limited liability coverage, not to exceed $100,000 per person. The language in the contract regarding post-judgment interest obligated Motorists Mutual to make payments as follows:
 
 
 10
 Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
 
 
 11
 For the following reasons, we hold that Motorists Mutual made an "offer" within the meaning of the insurance policy.
 
 
 12
 Contrary to what the Dicuses contend, the insurance contract does not require an unconditional offer to release Motorists Mutual from further interest liability. Mr. and Mrs. Dicus rely heavily on a case from the state court of Louisiana to support their argument. In Petry v. Richard, 532 So.2d 286 (La.Ct.App.1988), cert. denied, 533 So.2d 382 (La.1988), the court held that an insurer must make an unconditional offer to exonerate itself of liability. If an insurer could make payment contingent on any conditions that it wanted, an insurer's offer to pay as indicated in its policy, regardless of how the offer was conditioned, would always exonerate the insurer from having to pay interest. Id. at 289. The Dicuses maintain that the letter of March 13, 1989, was merely a conditional offer. Consequently, according to Mr. and Mrs. Dicus, Motorists Mutual did not relieve itself of any further interest liability until the Dicuses were in possession of the $100,000 policy limits.
 
 
 13
 The Dicuses are attempting to rewrite the contract in an effort to receive more than they would have received under the contract. The Dicus' reliance on Petry ignores the distinction between a "tender" and an "offer to pay" as explained in Calder Race Course, Inc. v. Illinois Union Insurance Company, 714 F.Supp. 1183 (S.D.Fla.1989). The duty to "tender," as mentioned in Calder Race Course, Inc., imposes a more stringent obligation on the insurer than does the duty to "offer to pay policy limits." In Calder Race Course, Inc., the insurance company failed to meet the contractual requirement of tendering the policy limits in order to toll the obligation to pay post-judgment interest. Motorists Mutual's contract with Laipply requires only an "offer to pay" rather than a "tender." Motorists Mutual made an "offer to pay" in accordance with the terms of the contract.
 
 
 14
 The rights and duties of the parties are governed by the language of the insurance policy in this contract dispute. Because Motorists Mutual made an offer to pay the full extent of the insurance coverage in accordance with the contract, Motorists Mutual's duty to pay post-judgment interest terminated as of the date on which it made the offer in the letter dated March 13, 1989. Accordingly, summary judgment for Motorists Mutual is hereby affirmed.