COLUMBUS ROCK COMPANY, a Corporation, Plaintiff,

v.

ALABAMA GENERAL INSURANCE COMPANY, a Corporation, Defendant.

Civ. No. 1308–N.

United States District Court
M. D. Alabama, N. D.
Aug. 6, 1957.

Ball & Ball, Montgomery, Ala., for plaintiff.

Rushton, Stakely & Johnston, Montgomery, Ala., for defendant.

JOHNSON, District Judge.

This cause came on for a hearing before this Court sitting without a jury, and was submitted to the Court on July 30, 1957, for a determination of the issues as made by the pleadings, stipulations, and the testimony of several witnesses. The Court now proceeds to make this determination in this memorandum opinion embodying herein the appropriate findings of fact and conclusions of law.

Plaintiff, Columbus Rock Company, a Corporation of the State of Georgia, originally brought this action against the defendant, Alabama General Insurance Company, a Corporation of Alabama, in the amount of $18,655.07, plus interest and attorneys' fees. Plaintiff's claim was reduced to $17,887.69, plus interest and attorneys' fees, after pre-trial discovery and pre-trial hearing. Plaintiff's suit is authorized and is brought as authorized by the provisions of Title 50, § 16 of the 1940 Code of Alabama, as amended.[1]

---

1. Pertinent portions of this section are: "§ 16. *Bonds required; suits thereon, etc.*—Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or sub-division thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges, shall be required, before commencing such work, to execute a performance bond, with penalty equal to fifty percent of the amount of the contract price, and in addition thereto, another bond with good and sufficient surety, payable to the state, county or municipal corporation or subdivision, letting the contract, in an amount not less than fifty percent of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials, feed-stuffs or supplies for or in the prosecution of the work provided for in such contract, and for the payment of reasonable attorneys' fees, incurred by successful claimants or plaintiffs in suits on said bond; and any person, firm or corporation that has furnished labor, materials, feed-stuffs or supplies for or in the prosecution or repair of any public building or public work, highways or bridges, and payment for which has not been made, shall be authorized to institute an action upon said bond in his or their name or names and to have their rights and claims adjudicated in such action and judgment rendered thereon; provided, however, that no suit shall be instituted on said bond until after forty-five days written notice to the surety thereon of the amount claimed to be due and of the nature of the claim. Such suit shall be commenced not later than one year from the date of final settlement of said contract. The giving of said notice by registered mail,

On or about March 15, 1956, the Hillabee Construction Company, Inc., referred to herein as the contractor, entered into a contract with the State of Alabama for certain highway construction work. This work was designated as project numbers 833, 834, 835, and 836, and was to be made in Bullock County, Alabama. In compliance with this statute, the contractor on the same date executed as principal a bond with the defendant as surety thereon, said bond being conditioned upon the prompt payment to all persons supplying the contractor with labor, materials, or supplies "for or in the prosecution of the work provided for in such contract."

Plaintiff furnished, at the contractor's request, crushed stone; the agreement to furnish this stone was after written quotations had been furnished to the contractor by the plaintiff. These written quotations set out a certain price per ton for the stone without the prepayment of the freight and a different and higher price per ton with the freight prepaid. The contractor designated to the plaintiff certain shipping points to which the stone was to be shipped for use on the four bonded projects. These points were relatively isolated places in Bullock County, Alabama, with no railway agents at these points to collect any freight that may have been collectible at the points of destination. Each shipping point was selected and designated for its being relatively close to one of the four bonded projects. The contractor agreed with the plaintiff to "reimburse Columbus Rock for the prepaid freight charges." These prepaid freight charges constitute $7,207.68 of the amount claimed of this defendant by this plaintiff. Plaintiff shipped this stone to the selected points, each shipment being invoiced and each invoice designating the project the stone was "for," either by number of the project or by the shipping point that had been designated for that particular project. For instance, one of the shipping points designated by the contractor was Three Notch, Alabama, and one or more of the invoices that designated the stone did so by the designation "Job number Three Notch, Alabama."

A certain amount of this stone was diverted by the contractor, that is to say, it was used on projects other than those this defendant stood surety for on this bond. This diversion was on one Bullock County road project and on certain gas station entrances. Because of patching work on the bonded projects and loss from stock piling some of this stone, it was impossible for the engineer in charge of the projects to determine the amount so diverted from the bonded projects. However, it is clear that it was a relatively small percentage of the amount of stone plaintiff shipped. This diversion was made by the contractor without the knowledge and without the consent of the plaintiff.

The contractor failed to pay the plaintiff, and the plaintiff, as the statute requires, gave written notice on March 21, 1957, to the defendant surety company that $18,655.07 was claimed by the plaintiff of the surety company. This defendant took no action after receiving this

postage prepaid, addressed to the surety at any of its places of business or offices shall be deemed sufficient hereunder. In the event the surety or contractor fails to pay such claim in full within forty-five days from the mailing of such notice, then such person or persons shall be entitled to recover of the contractor and surety, in addition to the amount of said claim, a reasonable attorney's fee, together with interest on such claim from the date of such notice. Every person or persons having a right of action on said last described bond as herein provided shall, upon written application to the authority under the direction of whom such work has been prosecuted, setting out that labor, material, feed-stuffs or supplies for such work has been supplied by him or them and that payment therefor has not been made, be promptly furnished a certified copy of said additional bond and contract. Such claimant shall be authorized to bring suit on said bond in the county in which the work provided for in said contract is to be performed, or in any county where the contractor or his surety does business, for his or their use and benefit against said contractor and his surety or either of them. * * * "

notice, and the suit claiming the cost of all the materials, the freight charges, and attorneys' fees was instituted on May 8, 1957. The defendant at the pretrial hearing on July 17, 1957, offered judgment to plaintiff in the amount of $10,109.79, with interest from March 22, 1957, this amount representing the cost of the materials without the freight charges and without the cost of the diverted materials and without any attorneys' fees.

The questions presented to the Court by these facts are:

(1) If the vendor pays freight charges on materials he furnished the contractor, can the vendor recover these charges from the contractor's surety under this Alabama statute?

(2) When materials are furnished to the contractor for bonded projects, but a portion of such materials are used by the contractor without the knowledge or consent of the supplier on nonbonded work, can the supplier recover from the surety on the contractor's bond for the cost of such diverted materials?

(3) Can plaintiff recover for attorneys' fees incurred by it under this statute when the claim was for $18,655.07 and the suit as finally amended by plaintiff claims only $17,887.69?

*Freight Charges:*

The present Alabama statute, supra, was enacted in 1935 and superseded a similar statute that had been enacted in 1927. As stated in the editor's note, page 601, Title 50, § 16, Alabama Code 1940:

"The Act of 1935 covers the same field as the Act of 1927, but is broader in its scope and comprehends situations in addition to those contemplated in the 1927 Act."

It should, at this time, be noted that the phrase in both these statutes regarding the payment of materialmen and those who furnish supplies to the contractor is almost identical. The 1927 statute, Gen.Acts 1927, p. 37, states the bond is to assure the payment of:

"* * * *All persons supplying him or them [contractor] with labor, material, feed-stuffs or supplies, in the execution of the work provided for in such contract.*" (Emphasis supplied.)

And the present statute, Gen.Acts 1935, pp. 70, 71, states:

"* * * *All persons supplying him or them with labor, materials, feed-stuffs or supplies* for or in the prosecution of the work provided for in such contract * * *.*" (Emphasis supplied.)

There seems to be only one Alabama case deciding this first question of whether freight charges are covered by the bond, as if it were materials, and that is the case of Central of Georgia Ry. Co. v. United States F. & G. Co., 1931, 223 Ala. 458, 137 So. 36, 38, 39; and the court there decided that freight charges were covered by the bond just as were charges for materials. There the court stated:

"In the City of Stuart, for Use and Benefit of Florida East Coast Ry. Co. v. American Surety Co. of New York, 38 F.2d 193, 194, 195, involving a claim for freight and demurrage, decided by the United States Circuit Court of Appeals, Fifth Circuit, the claim was sustained. The reasoning in that case seems to us unanswerable. To quote from the opinion:

* * * * *

" 'By all the cases, when a furnisher of material pays the freight, whether bound to do so or because the contractor does not pay, the freight is added to the cost of the material, and protected. See Maryland Casualty Co. v. Ohio River Gravel Co., 4 Cir., 20 F.2d 514. The same "place value" is given the material by the transportation, no matter who pays the freight, and to the same extent is material furnished.' "

Even though this Central of Georgia Ry. Co. case is a case that was decided

in 1931 and the present Alabama statute was enacted in 1935, the pertinent phrases of the two statutes are practically identical. It, therefore, appears and this Court concludes that the law governing this point at the present time is the same as that set out by the Alabama court in the Central of Georgia Ry. Co. case. As a matter of fact, this defendant does not seem to contend seriously that where a person furnishing supplies pays the freight charges as a part of the *over-all transaction,* the cost should not be added to the cost of the material and thus protected by the statute. Actually, it appears to the Court that the defendant's contention as to this point is that where the vendor pays the freight and does so by making a *loan* to the contractor *of money,* then the freight charges cannot be charged to the surety as a part of the material. This Court finds, specifically, that the transaction between this contractor, Hillabee Construction Company, and the plaintiff (as to the prepayment of the freight charges) was not a loan from the plaintiff to the contractor but was for the convenience of the parties, and because of the existing situation, a part of the over-all transaction in furnishing this stone to this contractor for use on these bonded projects. The Alabama case of United States Fidelity & Guaranty Co. v. First National Bank of Lincoln, 224 Ala. 375, 140 So. 755, relied upon by the defendant here, is not applicable to this case, since the court there found that the money furnished the contractor was furnished as a general loan and not chargeable as a part of the cost of the materials. For the same reason, the case of Bill Curphy Co. v. Elliott, 5 Cir., 207 F.2d 103, is not applicable.

This Court is of the opinion, therefore, that the first question must be decided in the affirmative; that is, that these freight charges on the materials furnished by this plaintiff to the contractor are recoverable under the Alabama statute as a part of the materials furnished by plaintiff to this contractor.

*Diversion:*

The second question presented concerns the diversion of certain materials. Again, it is necessary to note that this statute now before the Court was taken from the 1927 statute. In this connection, the 1927 statute said:

"* * * All persons supplying him or them [contractor] with labor, material, feed-stuffs or supplies, *in the execution of the work * * *."* (Emphasis supplied.)

The 1935 statute changed this phrase as regards the use of material to read as follows:

"* * * All persons supplying him or them with labor, materials, feed-stuffs or supplies *for or in the prosecution of the work* provided for in such contract * * *."* (Emphasis supplied.)

The Alabama case of United States Fidelity & Guaranty Co. v. Benson H. Co., 1931, 222 Ala. 429, 132 So. 622, 627, is relied upon strongly by this defendant. There the court stated:

"We know of no case which goes to the extent of requiring the materialman to prove by direct evidence that his supplies sold for a job, and reasonably suitable and appropriate to it, were in fact so used, if this may be inferred from the circumstances. But, if the material is in fact diverted to some other job, and is not used to promote the construction work covered by the bond, this may be shown by the bondsmen, and would defeat a recovery to that extent."

It will be noted that this case was decided under the 1927 statute, which required the material to be supplied *"in the execution of the work"* and not under the present statute, which requires it to be supplied *"for or in the prosecution of the work."* The court in the Benson case, supra, further stated:

"* * * But, if the material is in fact diverted to some other job, *and is not used to promote the con-*

*struction work * * *."* (Emphasis supplied.)

It therefore seems clear that the rationale underlying the Benson case was whether or not the material furnished was used to promote the construction work and must be viewed strictly in that light and cannot be any authority for the attitude of the Alabama courts at this time in construing the present statute.

There is no question in this case but that all these materials furnished by this plaintiff were furnished to the contractor in good faith and were furnished to the contractor for the work on these bonded projects. With this finding and conclusion, this Court must therefore hold that this second question must also be answered in the affirmative. In line with his conclusion, see Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 1946, 153 F.2d 527, 529, where the court was interpreting the Miller Act, 40 U.S. C.A. §§ 270a, 270b, a statute, insofar as this particular provision is concerned, very similar to the one now before the Court, and stated:

> "The further contentions of appellants are likewise without merit. There is no provision in the statute requiring that materialmen must deliver the materials at the job site or that the materials be 'used' in the prosecution of the work. The statute only requires that the materials be *'furnished' in* the prosecution of the work." (Emphasis supplied.)

*Attorneys' Fees:*

■ The last question presented is that concerning plaintiff's claim for a reasonable attorneys' fee. There is no question but that the Alabama statute authorizes persons, such as the plaintiff here, to be entitled, under certain circumstances, to recover in addition to the amount of the claim a reasonable attorneys' fee. The only question here is whether or not the fact that plaintiff's claim, made of the surety company, was for an incorrect amount, and because of that fact the plaintiff is not now entitled to any attorneys' fee. The only case cited to this Court and the only case that has been found on this point is a Louisiana case, Central Lumber Co., Inc. v. American Employers Ins. Co., La. App., 15 So.2d 229, 232. The attorneys for the defendant here rely upon that case to sustain their position. The Louisiana court was there interpreting the provisions of the Louisiana statute authorizing the recovery of attorneys' fees in addition to the amount claimed where the amount claimed was recovered by judgment in a suit filed thirty days after the receipt of notice by the surety. In that case, plaintiff demanded of the surety company in the written notice the sum of $1,304.34. After the expiration of the time set by the Louisiana statute, plaintiff filed suit against the surety company, claiming only $708.26. In that case, there was a demand made of the defendant for approximately 45% more than the plaintiff sued defendant for. The court there stated:

> "Obviously if the demand in writing must be made for the exact amount of the one sued for, the notice in this case was improper and the defendant's refusal to pay was therefore justified and it would thus be relieved from the payment of the penalty under the act."

In the case now before this court, the written demand upon the surety company by this plaintiff was for $18,655.07 and the suit was instituted, excluding the attorneys' fees, for the same amount. This amount was not reduced to $17,887.-69 until after pre-trial discovery and at the pre-trial hearing. It is apparent, therefore, that the demand in this case was for substantially the correct amount; that was not the case in the Central Lumber Co. suit. There is no doubt but that a statute such as the one we are now dealing with is penal in nature and must be strictly interpreted and applied. There is also no doubt but that this statute was designed by the legislature of the State of Alabama to protect persons supplying contractors and to assure to those persons the payment of their

charges for such supplies and materials without having to resort to the courts for the collection of same. In this case, this defendant made no offer whatever to the plaintiff until July 17, 1957, and then the offer was such that plaintiff could not accept same. At the time that offer was made, even if plaintiff could have, by the exercise of good business judgment, accepted it, the attorneys' fees were already incurred. It would be too harsh and too illogical to say that this legislature in enacting this statute intended to deprive a supplier of materials of any attorney's fee whatsoever if his written claim upon the surety was not for the exact amount he was entitled to. The written demand must be for an amount substantially the same as that the plaintiff is entitled to and it was in this case. Some logical rule concerning degree must be used in interpreting this statute. This Court concludes that the variance between the amount claimed of this surety company and the amount this plaintiff finally (after amendment) sued for and was entitled to was not a substantial variance, and, further, that the plaintiff in this case is entitled to a reasonable attorneys' fee.

It having been stipulated by and between the parties that this Court could, if it was determined that the plaintiff was entitled to an attorneys' fee, fix the amount without the introduction of any evidence relating to what amount would be reasonable, this Court has ascertained by reference to the Montgomery County Bar Association's schedule of minimum fees, and from experience, that the sum of $2,000 is reasonable.

The Court notes that in order to dissolve certain garnishments which were issued in this case, this defendant, acting under the provisions of Title 7, § 1008 of the 1940 Code of Alabama, gave bond in double the amount of plaintiff's demand, with the Gulf American Fire & Casualty Company as surety, said bond being in the amount of $44,000 and conditioned to pay such judgment as may be rendered in favor of the plaintiff and against this defendant in this cause.

Plaintiff by motion filed with this Court on July 30, 1957, moves that judgment in this cause be rendered in favor of the plaintiff against this defendant and also against this defendant's surety, the Gulf American Fire & Casualty Company. This Court reserved ruling on plaintiff's motion and retains jurisdiction of this cause for the purpose of ruling on said motion and amending the judgment in this cause if the necessity arises.

An order of judgment will be entered in accordance with this opinion.