**RILEY–STABLER CONSTRUCTION COMPANY, a Division of Riley Lumber & Supply Company, Inc., et al., Appellants,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Appellee.**

No. 24539.

United States Court of Appeals
Fifth Circuit.

June 7, 1968.

James E. Clark, Birmingham, Ala., for appellants.

Trammell E. Vickery, Atlanta, Ga., Ralph H. Ford, Huntsville, Ala., for appellee.

Before RIVES and GODBOLD, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

This is an appeal from a summary judgment entered on the motion of Westinghouse Electric Company, plaintiff, against Riley-Stabler Construction Company, defendant.

The record reveals that Riley-Stabler was engaged in the construction of Drake Towers, a public housing project for the City of Huntsville, Alabama. Cason & Martin Electric Company was one of Riley-Stabler's sub-contractors on that project. Fidelity & Casualty Company of New York is Riley-Stabler's surety on a Labor & Performance Bond executed to cover the Drake Towers project pursuant to Title 50 section 16 Code of Alabama. Supplies were obtained by Cason and Martin from Westinghouse Electric Company.

This suit was brought by Westinghouse against Riley-Stabler on an alleged unpaid balance of $29,034.92. The district court granted the motion of Westinghouse for summary judgment for the full amount plus a reasonable attorneys fee and interest at 6% on the entire amount from date of judgment.

The two principal contentions of Riley-Stabler, appellant, on this appeal are:

(1) Cason & Martin diverted materials furnished by Westinghouse for the Drake Towers project to other jobs, and under Title 50 sec. 16 of the Alabama Code, Riley-Stabler was not liable for materials from which it received no benefit.

(2) Genuine issues of fact were presented by the pleadings and affidavits, and the case should not have been disposed of on motion for summary judgment.

The first question involves an interpretation of Title 50 section 16 of the Alabama Code as revised in 1935.

The Alabama Act of 1927 dealing with a performance bond required that the bond cover "persons supplying (the contractor) material * * * *in the execution of the work.*" (Emphasis added) Alabama cases construing this Act held that there can be no recovery for materials diverted from the job even though ordered for the work. United States F. & G. Co. v. Benson Hardware, 222 Ala. 429, 132 So. 622; United States F. & G. Co. v. Yielding Bros. Co., 225 Ala. 307, 143 So. 176; United States F. & G. Co. v. Andalusia Mfg. Co., 222 Ala. 637, 134 So. 18; Singer, et al. v. Anniston Hardware Co., 222 Ala. 620, 133 So. 910. We do not believe, however, that these decisions are controlling as they were decided prior to the enactment of the present statute.

In 1935 the statute was amended to cover "all persons supplying (the contractor) with labor, materials * * * *for, or in the prosecution of the work* provided for in such contract." (Emphasis added). There are no decisions of the Alabama Supreme Court construing the amended act with regard to diversion of materials supplied for public works.

The Act has, however, been construed by a federal district court. In the case of Columbus Rock Company v. Alabama General Insurance Company, D.C., 153 F.Supp. 827, the court held that it was sufficient for recovery by the supplier that the materials were "furnished" to the contractor for the work on the bonded project and that diversion would not defeat the supplier's right to recover.

The Miller Act, which is the federal counterpart of the Alabama Act here under consideration, was enacted the same year as the amended Alabama statute and provides coverage to "(e)very person who has furnished labor or materials *in the prosecution of the work* provided for in such contract." (Emphasis added) 40 U.S.C. § 270a et seq.

In construing the Miller Act this court has held on numerous occasions that a materialman need not prove that his materials were actually used in the prosecu-

tion of the work of the prime contract. In Glassell-Taylor Company v. Magnolia Petroleum Company, 153 F.2d 527, at page 529, 5th Cir. (1946) the court said:

"There is no provision in the statute requiring that materialmen must deliver the material at the job site or that the materials be 'used' in the prosecution of the work. The statute only requires that the materials be 'furnished' in the prosecution of the work. * * * Whether or not the materials were wholly consumed 'in the prosecution of' the work provided for in the contract and bond is not controlling. What is important is the fact that these materials were 'supplied' to the subcontractor in the prosecution of the work provided for."

While this court is hesitant to indulge in the broad presumption urged by Westinghouse that the Alabama legislature intended to incorporate the Miller Act interpretation into the Act of 1935, it does merit consideration that both acts are ostensibly designed for the same purpose and enacted as improvements in their predecessor statutes. Also persuasive is the fact that the Alabama Supreme Court has held that the Act of 1927 was borrowed from the Heard Act, predecessor of the Miller Act. State for Use of Wadsworth v. Southern Surety Company, 221 Ala. 113, 127 So. 805, 70 A.L.R. 296. The Heard Act specifically provided that bond coverage extended only to materials "used" on a bonded project. The Miller Act deleted that provision and, as heretofore stated, has been interpreted to cover materials diverted to other uses.

■ But irrespective of the historical context, and approaching the issue as an original question, we are constrained to hold that the statutory words "for * * the prosecution of the work" encompass the furnishing of diverted materials as well as non-diverted ones. The insertion of the preposition, "for", in the 1935 Act constitutes a significant change over the 1927 Act. The legislature is presumed to have made the change for a purpose.

The phrase, as revised in the 1935 Act, shifts the inquiry from how or whether the materials were used to the purpose for which they were supplied. The natural and ordinary connotation of the phrase as it now reads is that a bond covers payment of materials which are used on a bonded project or which are furnished in the contemplation of being used on that project whether they are in fact so used or not.

We agree with the trial judge that the 1935 Act, Title 50, Section 16 of the Alabama Code, covers materials furnished for the project even when diverted.

We turn now to appellants' specification of error dealing with the propriety of using summary judgment procedure in this case.

The controlling principles governing the granting or denial of summary judgment have been stated on several occasions by this Circuit.

In the case of Whitaker v. Coleman, 5th Cir., 115 F.2d 305 (1940), the Court in discussing summary judgment stated:

"The invoked procedure, valuable as it is for striking through sham claims and defences which stand in the way of a direct approach to the truth of a case, was not intended to, it cannot deprive a litigant of, or at all encroach . upon, his right to a jury trial."

Again in Bruce Construction Corporation v. United States of America, 5th Cir., 242 F.2d 873, 874, this Court said in cautioning against the use of summary judgment:

"We have long recognized that no matter how enticing, in an era of congested dockets, is a device to dispose of cases without the delay and expense of traditional trials with their sometime cumbersome and time-consuming characteristics, summary judgment was not devised for, must not be used as, a substitute for trial. Its wholesome utility is, in advance of trial, to test, not as formerly on bare contentions found in the legal jargon of pleadings, but on the intrinsic merits, whether

there is in actuality a real basis for relief or defense."

■ In certain cases, "where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examinations and cross examination were necessary instruments in obtaining the truth" it has been held that summary judgment should not be granted. Alabama Great Southern Railway Company v. Louisville and Nashville Railroad Company, 5th Cir., 224 F.2d 1, 50 A.L.R.2d 1302.

In the *Alabama Great Southern* case wanton negligence had been alleged and the trial court in a summary judgment procedure held that the proof showed wanton negligence as a matter of law. This court in reversing declared:

" * * * generally speaking, * * inherent in wanton negligence is the idea of moral fault, arising from, a consciousness that the act done or omitted to be done would probably cause serious injury, and the doing or failing to do, the act, despite such consciousness, with reckless indifference to consequence. In short, in such a case, 'The mental state of the person who did or omitted to do that which duty required in the premises * * is the matter of controlling importance in cases of this character'. Law v. Saks, 241 Ala. 37, 1 So.2d 28, 29."

In the recent case of Azalea Meats, Inc. v. Muscat decided by this Circuit on November 22, 1967, 386 F.2d 5, where the issue of due diligence was involved, it was held that such an issue

" * * * involves, to some extent at least, the state of mind of the person whose conduct is to be measured against this test and it is simply not feasible to resolve such an issue on motion for summary judgment."

■ While we have held that under the Alabama statute of 1935, a supplier may recover if materials were "furnished" for the job we believe that under

decisions of this court it is also necessary that such materials be supplied "in good faith." Glassell-Taylor Company v. Magnolia Petroleum Company, supra, Columbus Rock Company v. Alabama General Insurance Company, supra. It was likewise the opinion of the trial judge that "good faith" was necessary, and in his order granting summary judgment he stated: "It further appears that 'in good faith' the plaintiff reasonably believed that the materials supplied to the subcontractor were intended for ultimate use upon the project known as 'Drake Towers'".

■ It is the opinion of this court that "good faith" involves "motive" and "subjective feelings" requiring the searching of "consciousness and conscience" and that "examination and cross-examination were necessary instruments in obtaining the truth." [1]

Under the authorities heretofore cited it is our opinion that as a general proposition the issue of good faith is inappropriate for determination by summary judgment procedure. A factual dispute on that issue can more properly be resolved on trial of the case.

The nonexistence of a factual dispute as to the suppliers' good faith does not clearly appear because proof of facts which might characterize his state of mind were conspicuously absent from the record below. This lack of proof is a circumstance unfavorable to the movant because it is he who has the burden of establishing that no genuine issue exists and that as a matter of law he is entitled to judgment. We believe that he has failed to overcome that burden, and for that reason he is not entitled to summary judgment.

While it is only necessary for reversal to decide that summary judgment was improper, since the case will be remanded for trial on the merits, two other questions will be discussed briefly.

Riley-Stabler contends that it tendered $15,000.00 prior to judgment and that

---

1. The Alabama Great Southern Railway Company v. Louisville and Nashville Railroad Company, supra.

because of the tender it should not be required to pay interest on that amount and that in determining attorneys fees the tender should be taken into consideration.

The record shows that Riley-Stabler and Fidelity and Casualty Company filed a Bill for Declaratory Judgment joining Westinghouse and Cason and Martin as defendants in the United States District Court for the Northern District of Alabama, in which the plaintiffs pleaded that they had always been ready, willing and able to pay as much as $15,000.00 on the claim. They stated further that they renewed their tender by agreeing to deposit that amount in money or security with the registry of the court. The Bill for Declaratory Judgment was dismissed upon motion of Westinghouse. In the case before us the aforementioned tender was renewed in plaintiff's pleadings, but no money or security was ever paid into the registry of the court.

The alleged "tender" in the Bill for Declaratory Judgment was substantially a plea of tender without the sum being tendered into court. As stated by the court in Collins v. Kingsberry Holmes Corporation, D.C., 243 F.Supp. 741, affirmed 347 F.2d 351, "The essential characteristics of a 'tender' are an unconditional offer to perform, coupled with a manifested ability to carry out the offer, and *production of the subject matter of the tender.*" (Emphasis added).

We agree with the trial judge that no valid tender was made.

The amount of attorneys fees is largely a matter of the trial court's discretion and we find no abuse of his discretion in the sum awarded.

For the reasons heretofore stated the cause is reversed and remanded.

GODBOLD, Circuit Judge (dissenting):

It is my opinion that summary judgment for the appellee was properly granted. Therefore, I respectfully dissent.

The Alabama statute, Tit. 50, § 16, covers materials supplied "for * * * the prosecution of the work." As the majority point out, this encompasses materials diverted from the job as well as those incorporated into, or used on, the job. Once the issue of diversion as a defense was out of the way, there remained no genuine issues of material fact, and the supplier was entitled to summary judgment. In my view it had shown by affidavit that it had supplied the materials involved "for * * * the prosecution of the work" and that it was unpaid; the surety did not by its affidavit put in issue any material fact relating thereto by anything that reached the dignity of admissible evidence.

There is one additional point. The majority refer to the "mental state" cases such as *Alabama Great Southern* [1] and *Azalea Meats.* [2] Some of the cases of suits by suppliers use the term "good faith" in a redundant manner to emphasize or paraphrase that the materials really were supplied for the prosecution of the job involved. In fact the district court used the term in granting summary judgment in this case. But the statutory requirement is that the materials be "for * * * the prosecution of the work." The mental operations of the supplier have no significance except in terms of the statute. Whether the supplier meets the statutory requirement involves some subjective elements—for instance it is obvious that a supplier would not be furnishing materials for the prosecution of job A if he knew they were for job B but billed them to job A anyhow.

But it seems to me to be a source of possible misunderstanding, especially in summary judgment cases, to engraft a

1. Alabama Great Southern R.R. v. Louisville & N. R.R. 224 F.2d 1 (5th Cir. 1955).

2. Azalea Meats, Inc. v. Muscat, 386 F.2d 5 (5th Cir. 1967).

judicial gloss that can be construed to be a subjective requirement of a scope broader than what the statute calls for and of undefined limits. I do not understand that any such broadening is intended by the majority in this case.