Paul A. WEIMER, Plaintiff-Appellant,†

v.

COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Respondent,

TRACELAND LANDSCAPE, Design Construction Company, Ronald E. Trace, United States Fidelity & Guaranty Company, Dynaweld Trailer Company, Royal Insurance Company of America, General Motors Corporation, Wisconsin Physicians Service Insurance Corporation, BBB Insurance Company, General Casualty Company of Illinois, Frederick R. Ross, Eugene Sheets, George Meyer and Keith Jurkowski, Defendants.

Court of Appeals

*No. 96–1440. Submitted on briefs January 16, 1997.—Decided May 29, 1997.*

(Also reported in 565 N.W.2d 595.)

†Petition to review granted.

DYKMAN, P.J., dissents.

For the plaintiff-appellant the cause was submitted on the briefs of *Hope K. Olson and Larry B. Brueggeman* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *James J. Jacobson* of *Piette & Jacobson* of Milwaukee.

Before Eich, C.J., Dykman, P.J., and Deininger, J.

DEININGER, J. Paul Weimer appeals a judgment awarding him damages for personal injuries he sustained in a motor vehicle accident. The judgment against Ronald Trace and Trace's insurer, Country Mutual Insurance Co. (Country Mutual), limited Weimer's recovery from the insurer to $100,000 plus post-verdict interest on that sum. The issues are: (1) whether § 631.43(1), STATS., allows Weimer to stack the

liability coverages on Trace's truck and trailer, both of which were involved in the accident; (2) if not, whether the policy language permits an interpretation that the $100,000 limit on both the truck and the trailer are available to Weimer; and (3) whether Country Mutual is liable for interest on the entire $610,000 judgment against Trace or just on the limit of its coverage. We conclude that neither § 631.43(1) nor the language of the policy permits Weimer to stack the liability coverages. We further conclude that because Country Mutual did not tender its policy limits to Weimer before the judgment, it is liable for interest on the full judgment. Accordingly, we affirm in part and reverse in part.

## BACKGROUND

The facts are not in dispute. On April 20, 1990, Trace, driving a dump truck with a trailer attached, crossed the center line of a highway and collided with a car driven by Paul Weimer. Weimer was injured in the accident. Trace had insured both the dump truck and the trailer under a business automobile policy issued by Country Mutual. The declarations page lists a separate premium for bodily injury liability coverage for each of the truck and the trailer. The declarations page also lists the liability limits for bodily injury as $100,000 for each person and $300,000 for each accident.

In October 1990, Country Mutual sent Weimer a letter containing Country Mutual's "offer . . . of its policy limits of $100,000.00 in full settlement of [Weimer's] claim against Country Mutual Insurance" and Trace. About four months later Country Mutual sent another letter confirming its earlier offer of the policy limits. Country Mutual's second letter also

852

stated its understanding that Weimer could not accept the offer because he was "in the process of evaluating the potential negligence of other defendants." Weimer filed suit against Trace and Country Mutual in April 1992.

Country Mutual moved for a declaration of rights on its limit of liability. The trial court ruled that Country Mutual's liability for bodily injury under the policy was the $100,000 stated in the limit of liability clause. The case proceeded to trial and a jury awarded Weimer $610,354.35 in damages against Trace.[1]

On March 7, 1996, the trial court signed an order for judgment ruling that Country Mutual was liable to Weimer for only the $100,000 policy limit and "interest as allowed by law." On March 14, 1996, the trial court held a hearing at the request of the parties to clarify the ruling on interest contained in the March 7 order. The trial court denied Weimer's motion to require Country Mutual to pay interest on the entire judgment and ruled that Country Mutual was liable for interest on the $100,000 limit alone, from the date of the jury verdict until the $100,000 was paid to Weimer.

Weimer appeals the determination limiting Country Mutual's liability to $100,000 and to interest on the $100,000 policy limit only. Other facts will be discussed below.

## ANALYSIS

*Whether Stacking is Permitted under § 631.43(1), STATS.*

Weimer argues that under § 631.43(1), STATS., the bodily injury coverage attributable to each vehicle

---

[1] The jury found Trace 75% causally negligent, Weimer 25% causally negligent, and total damages of $813,805.80.

should be aggregated or "stacked" because Trace paid a separate premium for coverage on each of the truck and trailer.[2] If Weimer is correct, Country Mutual would be liable for a limit of $100,000 per person per insured vehicle, or $200,000 total, rather than the $100,000 per person limit stated on the face of the policy.

Country Mutual contends that its liability is limited to $100,000 because Trace's policy contains the following single-limit clause limiting its total liability:

OUR LIMIT OF LIABILITY
1. *Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident*, our limit of liability is as follows:

a. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for "Each Person."

b. Subject to the limit of "Each Person" the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for "Each Accident."

(Emphasis added.)

Section 631.43(1), STATS., prohibits insurers from limiting an insured to a single policy limit where the insured has purchased multiple policies for the "same loss":

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance"

---

[2] The term "stacking" is used when the same insurer issues multiple policies and a party seeks to aggregate the coverage from each of the policies. *Agnew v. American Family Mut. Ins. Co.*, 150 Wis. 2d 341, 342 n.1, 441 N.W.2d 222, 223 (1989).

provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

Whether § 631.43(1), STATS., permits an injured party to stack liability coverages for which an insured has paid separate premiums, regardless of a single-limit clause, involves a question of law that we review de novo, owing no deference to the reasoning of the trial court. *See Schult v. Rural Mut. Ins. Co.*, 195 Wis. 2d 231, 237, 536 N.W.2d 135, 137 (Ct. App. 1995). The interpretation of language or clauses of an insurance contract is also a question of law. *Fletcher v. Aetna Cas. & Sur. Co.*, 165 Wis. 2d 350, 354, 477 N.W.2d 90, 91 (Ct. App. 1991).

The supreme court has held that the "2 or more policies" language of § 631.43(1), STATS., is satisfied if separate premiums are paid for each covered automobile. *Carrington v. St. Paul Fire & Marine Ins. Co.*, 169 Wis. 2d 211, 224, 485 N.W.2d 267, 272 (1992); *see Burns v. Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574, 578, 360 N.W.2d 61, 63–64 (Ct. App. 1984). The parties dispute, however, whether Trace paid separate premiums protecting against "the same loss."

The Wisconsin Supreme Court has held that where an insured pays multiple premiums for uninsured (UM) or underinsured motorist (UIM) protection, § 631.43(1), STATS., voids single-limit clauses contained in the policy, because the insured has paid multiple premiums insuring against the same loss. *See West Bend Mut. Ins. Co. v. Playman*, 171 Wis.

855

2d 37, 42, 489 N.W.2d 915, 917 (1992) (underinsured motorist); *Carrington*, 169 Wis. 2d at 224, 485 N.W.2d at 272 (uninsured motorist); *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 650, 436 N.W.2d 594, 598 (1989) (underinsured motorist); *Welch v. State Farm Mut. Auto. Ins. Co.*, 122 Wis. 2d 172, 178, 361 N.W.2d 680, 683 (1985) (uninsured motorist).

■

This court has held that there is no basis in the law for limiting the application of § 631.43(1), STATS., to uninsured motorist and underinsured motorist cases. *Schult*, 195 Wis. 2d at 240, 536 N.W.2d at 139. We have held that § 631.43(1) permits the stacking of liability coverage for nonowned vehicles. *Id.* at 241–42, 536 N.W.2d at 139. In *Schult*, Rural issued a policy for three of Keith Schult's vehicles, upon which Keith had paid three separate premiums for nonowned vehicle coverage. Keith was driving a rental van when he had an accident that injured his passenger, Connie Schult, in the van. We held that because Keith had paid three separate premiums protecting against the same loss, i.e., the risk of loss caused by the operation of a nonowned vehicle, § 631.43(1) permitted the coverages to be stacked. *Id.* at 241–43, 536 N.W.2d at 139–40.

Weimer argues that Trace, like the insured in *Schult*, paid Country Mutual two separate premiums, each protecting against the same loss. We disagree. Under *Agnew v. American Family Mut. Ins. Co.*, 150 Wis. 2d 341, 441 N.W.2d 222 (1989), the liability coverages on Trace's separate vehicles are not stackable under § 631.43(1), STATS., because Trace did not pay separate premiums insuring against "the same loss."

In *Agnew*, the insured owned three automobiles, each with a separate insurance policy. Each policy

contained a liability limit of $25,000 for bodily injury per person per accident. *Id.* at 343, 441 N.W.2d at 224. A member of the insured's household was involved in an accident in one of the insured vehicles, causing over $75,000 in bodily injury damages. The plaintiff sought to stack the $25,000 liability limits of each vehicle for a total of $75,000 in coverage, based on § 631.43(1), STATS. *Id.* at 343–44, 441 N.W.2d at 223–24.

The supreme court noted that the stacking permitted by § 631.43(1), STATS., "is logical when the insured has two or more insurance policies protecting against the same loss" such as "fire, life, or medical coverage, or uninsured or underinsured motorist coverage" because "the insured has usually acquired multiple protections against the same risk and expects to receive the proceeds of each policy." *Id.* at 349, 441 N.W.2d at 226. The court concluded, however, that unlike the cases involving the foregoing coverages, § 631.43(1) did not apply to liability coverage for the operation of specified, owned vehicles because the insured had not paid separate premiums insuring against the same loss. Rather, the *Agnew* insured had paid separate premiums protecting against separate losses:

> [I]n this case each policy insures against a different loss and only one policy insures the insured against the loss incurred. Each . . . policy insures against liability arising from the operation of the vehicle specified in the policy owned by the policyholder. Thus under this part of each policy in this case only the policy covering the [accident vehicle] covered liability incurred by reason of operation of the [accident vehicle].

*Id.*

857

In *Schult*, discussed above, we distinguished the situation where an insured has paid multiple premiums for nonowned vehicle protection from the situation in *Agnew*, where the insured paid a separate premium per vehicle for protection against liability incurred by operation of the insured vehicle:

> Rural agreed to pay Connie $100,000 for her damages pursuant to the liability insurance provision because Keith was driving a nonowned vehicle and became responsible for bodily injuries and not because Connie was injured while Keith was driving one of his covered vehicles. Consequently, the liability insurance in the instant case does not follow the vehicle, but follows the insured. In other words, under Keith's policy, when he is driving a nonowned vehicle, liability insurance is personal to him and may be stacked.
>
> Had Keith been driving one of his three covered vehicles, Connie's recovery would have been limited to $100,000 *because each premium insured against liability arising from the operation of the vehicle specified in the policy.*

*Schult*, 195 Wis. 2d at 241–42, 536 N.W.2d at 139 (emphasis added) (citation omitted).

■

Trace, like the insured in *Agnew*, paid a separate premium on each vehicle to insure against the liability incurred by operation of that vehicle. The premium he paid for each vehicle protects against liability incurred from the operation of the vehicle for which the premium was paid. The premium he paid for liability on the truck did not also protect him against liability incurred by operation of the trailer, and the premium he paid for the trailer does not also insure against liability incurred by the operation of the truck. His case

is unlike *Schult,* where the insured paid separate premiums calculated to compensate for a single risk or loss, i.e., the risk incurred by operation of a nonowned vehicle. We conclude, therefore, that under the analysis and holding in *Agnew,* § 631.43(1), STATS., does not void the single-limit clause contained in Trace's policy.

Weimer attempts to distinguish *Agnew* in two ways. First, he argues that the "same loss" language of § 631.43(1), STATS., does not control whether the coverage may be stacked. He contends that "[i]t is well recognized in Wisconsin law that the effect of having one policy with multiple vehicles and separate premiums paid for each vehicle is the same as having separate policies for each vehicle." Thus, he argues, Trace must be able to stack his coverages because he has "separate policies for each" of the truck and trailer. However, in cases where § 631.43(1) does not apply, neither the number of premiums paid nor the number of policies issued determines whether an insured may stack his or her insurance coverage; the language of the insurance contract determines the issue. *See State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.,* 174 Wis. 2d 434, 439, 498 N.W.2d 247, 249 (Ct. App. 1993). In each case cited by Weimer, the insured was permitted to stack coverages solely because the "same loss" language of § 631.43(1) voided a single-limit clause similar to the one contained in Trace's policy.[3]

---

[3] *See West Bend Mut. Ins. Co. v. Playman,* 171 Wis. 2d 37, 41, 489 N.W.2d 915, 917 (1992); *Schult v. Rural Mut. Ins. Co.,* 195 Wis. 2d 231, 241, 536 N.W.2d 135, 139 (Ct. App. 1995); *Krause v. Massachusetts Bay Ins. Co.,* 161 Wis. 2d 711, 714, 468 N.W.2d 755, 756 (Ct. App. 1991); *Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 577–78, 360 N.W.2d 61, 63 (Ct. App. 1984). Weimer also cites *State Farm Mut. Auto. Ins. Co. v. Continental*

We have found no authority to support Weimer's contention that independent of any protection afforded by § 631.43(1), and regardless of a single-limit provision in the insurance contract, an insured receives separate, stackable insurance policies simply by paying separate premiums.

Finally, Weimer points out that only one insured vehicle was involved in the accident in *Agnew*, as opposed to the two insured vehicles involved in the accident here. However, the *Agnew* court determined that liability coverages insuring against the risk of loss arising out of the operation of specified, owned vehicles do not insure against the same loss, and thus, § 631.43(1), STATS., does not apply to those coverages. The relevance of that determination is not diminished by this purported distinction. This is where our analysis differs from that of the dissent, which agrees with Weimer's assertion that *Agnew* is inapplicable "where two insured vehicles are involved in the same accident." Dissent at 871.

The dissent is correct that our interpretation of the analysis and holding in *Agnew* is the "underpinning" of this opinion. Dissent at 869. We are not untroubled by the seeming incongruity between the result here and that in *Schult*: multiple policy limits are available for a loss incurred when a person is injured by an insured's operation of a single nonowned vehicle, but only a single-limit is available when the injury arises out of the operation of multiple insured vehicles. We surmise

---

*Cas. Co.*, 174 Wis. 2d 434, 441, 498 N.W.2d 247, 250 (Ct. App. 1993). *State Farm* holds that § 631.43(1), STATS., does not apply to an insurer which seeks to stack another insurer's policies in a proration action. *Id.* at 439, 498 N.W.2d at 249. In an action to prorate policies between insurers, the sole resort is to the language of the insurance policies. *Id.*

that most holders of liability insurance policies covering multiple vehicles would presume the opposite result in both instances. We conclude that the results, however counter-intuitive they might be, are required by the interaction of § 631.43, STATS., the language of the insurance policies, and the holdings of this court and the supreme court.[4] As we have previously noted in responding to an argument that the result we reached in a stacking case was "unreasonable or illogical":

> The resolution of any coverage dispute is necessarily governed by the terms of the policy as negotiated by the parties. . . . The law of insurance coverage is not governed by the fortuity of events and whether stacking results. Rather it is governed by the contract of the parties.

*State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.,* 174 Wis. 2d 434, 442, 498 N.W.2d 247, 250 (Ct. App. 1993).

---

[4] Appellate courts in several jurisdictions have interpreted policies containing single-limit clauses similar to the one at issue here to preclude "stacking" of per-vehicle liability coverage limits in accidents involving more than one covered vehicle. *See Shamblin v. Nationwide Mut. Ins. Co.,* 332 S.E.2d 639 (W.Va. 1985); *Suh v. Dennis,* 614 A.2d 1367 (N.J. Super. Ct. Law Div. 1992); *Houser v. Gilbert,* 389 N.W.2d 626 (N.D. 1986); *Inman v. Hartford Ins. Group,* 346 N.W.2d 885 (Mich. Ct. App. 1984). None of these cases discuss a statute similar to § 631.43, STATS. The present result may, therefore, seem troubling only by comparison to those cases in which the Wisconsin statute has overridden contrary policy language. Once it is determined, however, that § 631.43 does not apply to a given coverage dispute, as we conclude is the case here, the result dictated by the policy language is apparently not without precedent.

Unlike the dissent, we cannot assume the *Agnew* court would have reached a different result had two covered vehicles been involved in the accident there under consideration. Dissent at 871. The supreme court's conclusion that per-vehicle liability coverage does not insure "against the same loss" for purposes of the applicability of § 631.43, STATS., was based on its interpretation of the statute and the nature of the per-vehicle liability coverages provided by the policies under consideration. We are unwilling to hold that the statute sometimes applies to this type of coverage, and sometimes not, depending on considerations wholly outside the language of the insurance policies and the statute. Such a departure from what we believe to be a correct reading of *Agnew* should not originate with this court. *See State v. Szulczewski,* 209 Wis. 2d 1, 8, 561 N.W.2d 781, 784–85 (Ct. App.), *pet. for review granted,* No. 96–1323-CR (June 10, 1997).

### *Ambiguity of the Policy Language*

Since we conclude that § 631.43, STATS., does not apply to the coverages at issue, we next consider whether the language of the Country Mutual policy permits Weimer to recover up to $200,000 of the judgment against the insurer, instead of only $100,000 as the trial court ruled. Weimer argues that the language of the Country Mutual policy is ambiguous as to the amount of coverage afforded when two covered vehicles are involved in the same accident. Generally, the interpretation of an insurance contract is controlled by general principles of contract construction. *Sprangers v. Greatway Ins. Co.,* 182 Wis. 2d 521, 536, 514 N.W.2d 1, 6 (1994). While contract principles generally apply, and the primary objective is

to carry out the intentions of the parties, an insurance policy should be interpreted to mean what a reasonable insured would have understood the words of the policy to mean. *General Cas. Co. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718, 722 (1997). Whether a contract is ambiguous is a question of law which we review de novo. *Spencer v. Spencer*, 140 Wis. 2d 447, 450, 410 N.W.2d 629, 630 (Ct. App. 1987). An insurance policy is ambiguous if, considering the language as a reasonable insured would have understood it to mean, it is fairly susceptible of more than one construction. *Maryland Cas. Co. v. Ben-Hur*, 203 Wis. 2d 411, 418, 553 N.W.2d 535, 537 (Ct. App. 1996).

Weimer argues that the following clauses, when read with the limit of liability clause, render the policy ambiguous:

PART II—WHICH AUTOS ARE COVERED AUTOS

A. The owned autos shown on the declarations page are covered for each of the coverages where a premium charge is shown.

PART IV—LIABILITY INSURANCE

A. WE WILL PAY
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

Weimer contends the language of Parts II and IV indicate that the purpose of the policy was to separately insure each vehicle owned by Trace for the

full amount of the policy limits. However, the limit of liability clause states: *"[r]egardless* of the number of covered autos, insureds, claims made or vehicles involved in the accident . . . [t] he *most* we will pay for all damages resulting from bodily injury to *any one person* is the limit listed in the declarations page for '[e]ach person.' " (Emphasis added.) The declarations page lists $100,000 as the limit for "each person." The language from Parts II and IV to which Weimer refers merely defines which vehicles are covered by the policy and the types of damages for which Country Mutual will be responsible under the policy. In order to read Parts II and IV as Weimer suggests, an insured would have to disregard the limit of liability clause entirely. We conclude that the language is fairly susceptible of only one construction to a reasonable insured: for the vehicles listed on the declarations page, Country Mutual promised to pay all sums for bodily injury for which Trace became legally liable, up to the declared bodily injury limits, as further limited by the single-limit language.

### *Post-Verdict Interest*

The trial court ordered Country Mutual to pay interest on the amount of the policy limits, $100,000, from the date of the verdict until Country Mutual paid Weimer the policy limits. Weimer contends, relying on *McPhee v. American Motorists Ins. Co.*, 57 Wis. 2d 669, 205 N.W.2d 152 (1973), that Country Mutual is liable for interest on the entire judgment, or $610,354.35. We agree.

Trace's policy contained the following language regarding interest on a judgment:

B. WE WILL ALSO PAY.

864

In addition to our limit of liability, we will pay for the insured:

. . . .

5. All interest accruing after the entry of judgment in a suit we defend. Our duty to pay interest ends when we pay or tender our limit of liability.[5]

In *McPhee*, the supreme court considered the exact issue before us: whether a liability insurer is liable for interest on the full judgment received against the insured by a third party or solely on the policy limit. *Id.* at 672–73, 205 N.W.2d at 154–55; *see Nichols v. United States Fidelity & Guar. Co.*, 13 Wis. 2d 491, 501, 109 N.W.2d 131, 136–37 (1961).

Whether an insurer is liable for post-judgment interest on the amount of the judgment as opposed to the policy limits depends on the language used by the parties in their contract of insurance. *McPhee*, 57 Wis. 2d at 672–73, 205 N.W.2d at 155. In *McPhee*, the insurance policy promised to pay, as has Country Mutual, "all interest accruing after entry of judgment."[6] *Id.* at 673, 205 N.W.2d at 155. Construing this language, the supreme court concluded that the insurer was liable for interest on the entire judgment:

[5] Country Mutual does not challenge the trial court's order requiring interest to be paid from the date of the verdict, as opposed to the date of entry of judgment. *See* § 814.04(4), STATS.

[6] The policy at issue in *McPhee* provided:

II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the company shall:

. . . .

(2) [P]ay . . . *all interest accruing after entry of judgment* until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon . . . .

The phrase "all interest" does not connote the thought of some interest, or part of the interest on the judgment, but rather all interest on the judgment, whatever its amount in relation to the policy limits.

*Id.* at 677, 205 N.W.2d at 157. We conclude that under *McPhee*, Country Mutual is liable, if at all, for interest on the entire judgment.

Country Mutual, however, contends that *McPhee* does not apply in this case because it tendered its policy limits to Weimer before the trial. On October 3, 1990, counsel for Country Mutual wrote a letter to Weimer's counsel containing the following:

This will confirm Country Mutual Insurance Company's offer to you of its policy limits of $100,000.00 in full settlement of your client's claim against Country Mutual Insurance Company and its insured, Ron Trace. Please be advised that the offer remains in full force and effect and I ask that you convey this to your client.

On February 4, 1991, a second letter was sent to Weimer's counsel, reaffirming that the "offer of policy limits" remained in effect and expressing Country Mutual's understanding that "the offer could not be accepted because [Weimer's counsel was] in the process of evaluating the potential negligence of other defendants."

The parties dispute whether the letters constituted a "tender" of Country Mutual's policy limits.[7] To determine whether Country Mutual

---

*McPhee v. American Motorists Ins. Co.,* 57 Wis. 2d 669, 673, 205 N.W.2d 152, 155 (1973) (emphasis added).

[7] The parties also dispute whether the trial court concluded that Country Mutual had tendered its policy limits in the two

tendered its policy limits, we must apply a legal standard to undisputed facts. Whether undisputed facts fit a legal standard is a question of law which we review de novo, owing no deference to the trial court's determination. *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 978, 473 N.W.2d 506, 508 (Ct. App. 1991).

In support of its contention that the two letters constitute a tender of the policy limits, Country Mutual refers us to the AMERICAN HERITAGE DICTIONARY 1326 (1979), which defines tender as: "1. A formal offer, as: a. *Law*. An offer of money or service in payment of an obligation . . . .To offer formally . . . ." Country Mutual contends that the two letters offering its policy limit to Weimer thus constitute a tender of the limit.

Country Mutual is correct that in construing the language of an insurance policy, we may look to dictionary definitions for the common meaning and usage of words. *See Holsum Foods v. Home Ins. Co.*, 162 Wis. 2d 563, 568–69, 469 N.W.2d 918, 920–21 (Ct. App. 1991). The term "tender," however, has a well-known legal construction that contains elements which go beyond the common meaning of "a formal offer." In *Novak v. American Family Mut. Ins. Co.*, 183 Wis. 2d 133, 139–40, 515 N.W.2d 504, 507 (Ct. App. 1994), we turned to the definition of tender contained in BLACK'S LAW DICTIONARY, which states:

> **Tender**. An offer of money. The act by which one produces and offers to a person holding a claim or demand against him the amount of money which he

letters. The trial court's comments are unclear on this point. Because the question is one we review de novo, *see Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 978, 473 N.W.2d 506, 508 (Ct. App. 1991), we need not determine whether the trial court found tender.

considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition. . . . *Essential characteristics of tender are unconditional offer to perform coupled with manifested ability to carry out the offer and production of subject matter of tender.*

. . . .

*The actual proffer of money, as distinguished from mere proposal to pay money, without offer of cash, is not "tender."*

BLACK'S LAW DICTIONARY 243 (6th ed. 1990) (emphasis added).[8]

Wisconsin cases have not directly addressed construction of the term "tender" in the context of tendering the policy limits of an insurance contract. However, Wisconsin courts have construed the term "tender" in other contexts consistently with the above definition found in BLACK'S. In *Estreen v. Bluhm*, 79 Wis. 2d 142, 255 N.W.2d 473 (1977), for example, the supreme court addressed whether tender had occurred during a transaction for the sale of real estate. Estreen, the buyer, contended that he had tendered the purchase price on parcels of commercial real estate when he appeared at the closing conference "available and ready" to pay the purchase price to the sellers. *Id.* at 157, 255 N.W.2d at 481. The supreme court rejected Estreen's argument, holding that because Estreen's

---

[8] *See also Guy F. Atkinson Co. v. Internal Revenue Service,* 814 F.2d 1388, 1393 (9th Cir. 1987) (essential characteristics of tender are an unconditional offer to perform, coupled with a manifested ability to carry out the offer, and production of the subject matter of the tender), *cert. denied,* 485 U.S. 970 (1988); *Riley-Stabler Constr. Co. v. Westinghouse Elec. Corp.,* 396 F.2d 274, 278 (5th Cir. 1968); WILLISTON ON CONTRACTS § 1810 (Walter H. E. Jaeger ed., 3d ed. 1972).

"readiness" to close the sale was conditioned upon acceptance of the payment as the full purchase price, and there was no showing that the money had been "placed beyond his own use," he had not made a satisfactory tender of the purchase price. *Id.* at 157, 255 N.W.2d at 481–82.

Country Mutual contends it "did everything it could to make the policy limits available to [Weimer] prior to judgment" and that its failure to produce the $100,000 policy limits was "due to no fault of Country Mutual," referring to Weimer's inability to accept the policy limits at the time of the letters offering payment.[9] However, as the supreme court recognized in *Estreen*, one of the requirements of a tender of money is that the party wishing to achieve the tender place the money beyond its own use. That can be accomplished by either proffering the money to the other party, or depositing the sum with a third party, such as the clerk of court. *See McPhee*, 57 Wis. 2d at 672, 205 N.W.2d at 154; *Riley-Stabler Constr. Co. v. Westinghouse Elec. Corp.*, 396 F.2d 274, 278 (5th Cir. 1968) (alleged "tender" actually only a plea of tender when the sum was not paid to party or court); *Calder Race Course, Inc. v. Illinois Union Ins. Co.*, 714 F. Supp. 1183, 1189 (S.D. Fla. 1989) (same); *Flowers Transp., Inc. v. M/V Peanut Hollinger*, 94 F.R.D. 99, 100 (E.D. La. 1982) (An offer to pay money, unaccompanied by actual payment of the money to the party or to the court, is not a valid tender).

---

[9] The trial court found that at the time Country Mutual offered its policy limits to Weimer, Weimer was "specifically not . . . in a position to accept the $100,000 as a result of Pierringer-type difficulties."

We conclude that Country Mutual did not tender its policy limits in this action. Country Mutual neither produced the subject matter of the tender, $100,000, to Weimer nor put the sum "beyond [its] own use," e.g., by depositing it with the clerk of the trial court. Accordingly, we reject Country Mutual's attempts to distinguish this case from *McPhee* and conclude that Country Mutual is liable to Weimer for interest on the entire judgment, or $610,354.35.[10]

Finally, Country Mutual requests that we affirm the trial court's decision on post-verdict interest based on the "equities."[11] Country Mutual contends that this case presents "a unique situation in regard to the post-[verdict] interest." The unique situation to which Country Mutual refers is its understanding that Weimer was unable to accept its offer of the $100,000 policy limit due to "Pierringer-type difficulties" regarding other potential defendants. As we discussed above, whether an insurer is liable for interest on the entire judgment depends on the language of the insurance contract. *See McPhee*, 57 Wis. 2d at 672–73,

---

[10] Even if Country Mutual's use of the term "tender" were ambiguous, we would reach the same result. We may not modify the unambiguous language of an insurance contract. *Fletcher v. Aetna Cas. & Sur. Co.*, 165 Wis. 2d 350, 354–55, 477 N.W.2d 90, 91 (Ct. App. 1991). However, where an ambiguity exists, we must construe the language against the drafter and in favor of the insured. *Id.*

[11] The trial court concluded that because Weimer could have, but did not accept Country Mutual's offer of its policy limits after the trial court's October 18, 1995, judgment declaring Country Mutual's limit of liability to be $100,000, the "equities" of the case required an apportionment of the post-verdict interest.

205 N.W.2d at 155. Country Mutual has not referred us to any authority holding that an award of post-judgment interest is based on a balancing of equities. We therefore do not consider the argument.

*By the Court.*—Judgment affirmed in part and reversed in part.

DYKMAN, P.J. (*dissenting*). When Ronald Trace contacted his insurance agent to purchase liability coverage for the four trucks and three trailers that he used in his landscaping business, he must have thought that he was obtaining liability coverage on all of the vehicles. Probably, no one told him that although he was paying for liability coverage for his trailers, coverage was non-existent when he pulled the trailers with his trucks. Had someone done so, I think Trace would have been incredulous. He and most people would conclude that the time when liability coverage on a trailer is most needed is when it is being pulled by one's motor vehicle. I cannot agree that all Trace bought was one coverage of $100,000 no matter how many premiums he paid or how many of his vehicles were involved in an accident. The real victim is Weimer, who should be entitled to the policy limits of the two policies that Trace purchased to cover this type of accident.[1] Instead, he must now attempt to collect one-half million dollars from a small landscaper whose salvation will probably lie in bankruptcy.

I agree with much of the majority opinion. I agree that *West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 42, 489 N.W.2d 915, 917 (1992), read together with *Schult v. Rural Mut. Ins. Co.*, 195 Wis. 2d 231, 240–41,

---

[1] The parties do not dispute that operation of the trailer was a substantial factor in the accident.

536 N.W.2d 135, 139 (Ct. App. 1995), requires a conclusion that where an insured pays multiple premiums insuring against the same loss, § 631.43(1), STATS., voids single-limit clauses in liability insurance policies. I agree that when Ronald Trace purchased liability insurance for his seven vehicles, he, in effect, purchased seven separate policies. I agree with the majority's discussion of post-verdict interest. Where I part company with the majority opinion is with its interpretation of *Agnew v. American Family Mut. Ins. Co.*, 150 Wis. 2d 341, 441 N.W.2d 222 (1989), which is the underpinning of the majority's reasoning.

Section 631.43(1), STATS., which permits the "stacking" of insurance coverages, has been much litigated. The statute alters the agreement that insureds and insurance companies make with each other. The statute would seem to be self-explanatory, though it has been far from that:

> (1) GENERAL. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provision. . . .

Ronald Trace's policy has an "other insurance" clause:

> OUR LIMIT OF LIABILITY
> 1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:
> a. The most we will pay for all damages resulting from bodily injury to any one person

caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for "Each Person."

b. Subject to the limit of "Each Person" the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for "Each Accident."

It would seem that § 631.43(1), STATS., would void the "other insurance" clause in Trace's policy with Country Mutual. But the same could be said of that statute and the liability policy involved in *Agnew*. There, the court concluded that § 631.43(1) was inapplicable in a situation where three vehicles were covered by a liability insurance policy, but only one vehicle was involved in the accident. The court concluded that § 631.43(1) did not govern the three policies because the three policies did not insure against the same loss. The loss was the accident in which only one of the three vehicles was involved. The other two vehicles were not involved in the accident. The court explained its conclusion:

> [I]n this case each policy insures against a different loss and only one policy insures the insured against the loss incurred. Each American Family policy insures against liability arising from the operation of the vehicle specified in the policy owned by the policyholder. Thus under this part of each policy in this case only the policy covering the Ford pickup truck covered liability incurred by reason of operation of the Ford pickup truck.
>
> . . . .
> In this case, Larry Sailor purchased $25,000 in liability coverage for the Ford pickup truck, the vehicle he owned that was involved in this accident.

He could have purchased more liability coverage for the Ford pickup. He chose not to. If stacking is permitted in this case, Larry Sailor would obtain increased unpurchased liability coverage for himself and the relatives residing in his household for operation of that Ford pickup. It does not make sense to conclude that the legislature intended sec. 631.43(1) to allow the insured in this case to aggregate the three policies to provide insurance protection that the policyholder did not purchase.

*Agnew*, 150 Wis. 2d at 349–51, 441 N.W.2d at 226–27.

The difference between *Agnew* and the case at hand is easy to see. Here, two insured vehicles were involved in the same accident. Had Larry Sailor's Ford pickup and his Ford LTD both been involved in the accident which injured Agnew, the *Agnew* court could not have reasoned as it did to reach a conclusion that two of Sailor's policies could not be stacked. In that hypothetical, Sailor would have purchased two policies, paying a premium for each, with each vehicle being involved in the same accident. In that hypothetical, the court would not have concluded that Sailor would have obtained increased *unpurchased* liability insurance for himself and his relatives. The *Agnew* court's reasoning applied to a situation in which one of an insured's several vehicles was involved in an accident. That reasoning is inapplicable to a case where two insured vehicles are involved in the same accident. Having concluded that *Agnew* is inapplicable, I also conclude that § 631.43(1), STATS., voids Country Mutual's "other insurance" clause. Weimer is therefore entitled to the policy limits of both the truck policy and the trailer policy.

Today, many people pull trailers. Boats, snowmobiles, recreational vehicles, household goods

and iceboats are commonly transported in or on trailers. Ronald Trace's policy with Country Mutual provides that trailer liability coverage is primary coverage if the trailer is connected to an owned and insured motor vehicle. If Country Mutual's is a typical policy, trailer owners must be told that even though they purchase liability coverage for their trailers, and even though their policy tells them that this liability coverage is primary, in fact they have no liability coverage on their trailers, except for very unusual situations. They can avoid this problem by buying liability coverage for their motor vehicles from one insurance company and liability coverage for their trailers from another company, or they can buy double or triple the coverage that they need from one company. But if they buy trailer liability insurance and motor vehicle liability insurance from one company, they cannot assume that the liability coverage they purchase for their trailers will be there when they need it. I cannot agree with the majority's view of *Agnew*, which leads to this result. I therefore respectfully dissent.